# EXHIBIT B



PERMIT NO. 3842-245-0109-S-05-0
ISSUANCE DATE: 09/27/20417

# GEORGIA
DEPARTMENT OF NATURAL RESOURCES

ENVIRONMENTAL PROTECTION DIVISION

## Air Quality Permit

In accordance with the provisions of the Georgia Air Quality Act, O.C.G.A. Section 12-9-1, et seq and the Rules, Chapter 391-3-1, adopted pursuant to and in effect under that Act,

**Facility Name:** KPR U.S., LLC d/b/a Kendall Patient Recovery U.S., LLC

**Facility Address:** 1430 Marvin Griffin Road
Augusta, Georgia 30906 Richmond County

**Mailing Address:** P.O. Box 430
Augusta, Georgia 30913

**Facility AIRS Number:** 04-13-245-00109

is issued a Permit for the following:

**Operation of an ethylene oxide sterilization and wound care product facility. This Permit is issued for the purpose of establishing practically enforceable emission limitations such that the facility will not be considered a major source with respect to Title V of the Clean Air Act Amendments of 1990.**

This Permit is conditioned upon compliance with all provisions of The Georgia Air Quality Act, O.C.G.A. Section 12-9-1, et seq, the Rules, Chapter 391-3-1, adopted and in effect under that Act, or any other condition of this Permit.

This Permit may be subject to revocation, suspension, modification or amendment by the Director for cause including evidence of noncompliance with any of the above; or for any misrepresentation made in Application No. 26133 dated July 17, 2017; any other applications upon which this Permit is based; supporting data entered therein or attached thereto; or any subsequent submittals or supporting data; or for any alterations affecting the emissions from this source.

This Permit is further subject to and conditioned upon the terms, conditions, limitations, standards, or schedules contained in or specified on the attached **10** pages.



[Signed]

───────────────────────────
Richard E. Dunn, Director
Environmental Protection Division

State of Georgia
Department of Natural Resources
Environmental Protection Division

Permit No.
3842-245-0109-S-05-0

Page 1 of 10

# Equipment List

| Emission Units | | | Associated Control Devices | |
|---|---|---|---|---|
| Source Code | Description | Installation Date | Source Code | Description |
| SA | EtO Sterilization Chamber A | 2008 | RA<br>CO | Recovery System A<br>Catalytic Oxidizer+ |
| SB | EtO Sterilization Chamber B | 2009 | RB<br>CO | Recovery System B<br>Catalytic Oxidizer+ |
| FE1 | Ethylene Oxide Sterilization Fugitive Emissions | N/a | None | None |
| C2 | Alcohol Prep Pad Machine | 2004 | N/a | N/a |
| C3 through C6, C9, C11, and C18 through C21 | Alcohol Prep Pad Machines | 1988 | N/a | N/a |
| C24 | Alcohol Prep Pad Machine | 2004 | N/a | N/a |
| C25 and L1 | Alcohol Prep Pad Machines | 2006 | N/a | N/a |

## Storage Tanks

| Source Code | Capacity (gallons) | Contents | Installation Date | True Vapor Pressure (psia) |
|---|---|---|---|---|
| I2 | 5,000 | Isopropyl Alcohol Tank 2 | 1968 | 0.925 |
| I3 | 8,000 | Isopropyl Alcohol Tank 3 | 1974 | 0.92 |

## Boilers

| Source Code | Input Heat Capacity (MMBtu/hr) | Description | Installation Date | Construction Date |
|---|---|---|---|---|
| B2 | 31.5 | Industrial Boiler, natural gas and no. 2 fuel oil | 1989 | 1989 |
| B3 | 25.9 (gas)<br>25.3 (oil) | Clayton Industries, natural gas and no. 2 fuel oil | 2009 | 2009 |
| B4 | 25.9 (gas)<br>25.3 (oil) | Clayton Industries, natural gas and no. 2 fuel oil | 2009 | 2009 |

1. **General Requirements**

    1.1 At all times, including periods of startup, shutdown, and malfunction, the Permittee shall maintain and operate this source, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions. Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Division which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection or surveillance of the source.

    1.2 The Permittee shall not build, erect, install or use any article, machine, equipment or process the use of which conceals an emission which would otherwise constitute a violation of an applicable emission standard. Such concealment includes, but is not limited to, the use of gaseous diluents to achieve compliance with an opacity standard or with a standard that is based on the concentration of a pollutant in the gases discharged into the atmosphere.

    1.3 The Permittee shall submit a Georgia Air Quality Permit application to the Division prior to the commencement of any modification, as defined in 391-3-1-.01(pp), which may result in air pollution and which is not exempt under 391-3-1-.03(6). Such application shall be submitted sufficiently in advance of any critical date involved to allow adequate time for review, discussion, or revision of plans, if necessary. The application shall include, but not be limited to, information describing the precise nature of the change, modifications to any emission control system, production capacity and pollutant emission rates of the plant before and after the change, and the anticipated completion date of the change.

    1.4 Unless otherwise specified, all records required to be maintained by this Permit shall be recorded in a permanent form suitable for inspection and submission to the Division and shall be retained for at least five (5) years following the date of entry.

    1.5 In cases where conditions of this Permit conflict with each other for any particular source or operation, the most stringent condition shall prevail.

2. **Allowable Emissions**

    *Avoidance of 40 CFR 70*
    2.1 The Permittee shall limit the amount of distillate fuel oil combusted at the facility to 2,000,000 combined gallons during any consecutive twelve-month period.
    [Avoidance of 40 CFR Part 70 for $SO_2$ and $NO_X$]

    *40 CFR 63 Subpart A – General Provisions*
    2.2 The Permittee shall comply with all applicable provisions of the National Emission Standard for Hazardous Air Pollutants (NESHAP) as found in 40 CFR Part 63 Subpart A – "General Provisions".
    [40 CFR 63 Subpart A]

State of Georgia
Department of Natural Resources
Environmental Protection Division

Permit No.
3842-245-0109-S-05-0

Page 3 of 10

*40 CFR 63 Subpart O*
2.3  The Permittee shall comply with all applicable provisions of the National Emission Standard for Hazardous Air Pollutants (NESHAP) as found in 40 CFR 63 Subpart O – "Ethylene Oxide Emission Standards for Sterilization Facilities," for the operation of the ethylene oxide (EtO) sterilization equipment.
[40 CFR 63 Subpart O; 40 CFR 63.360]

2.4  The Permittee shall reduce ethylene oxide emissions to the atmosphere from each sterilization vent from the EtO Sterilization Chambers (Source Codes SA and SB) by at least 99%.
[40 CFR 63 Subpart O; 40 CFR 63.362(c); Avoidance of 40 CFR Part 70 for HAPs]

2.5  The emission limit in Condition 2.4 applies during sterilization operation. The emission limit does not apply during periods of malfunction.
[40 CFR 63 Subpart O; 40 CFR 63.362(b)]

*Boilers*
2.6  The Permittee shall be subject to all applicable provisions of 40 CFR 60 Subpart A - "General Provisions" for the Industrial Boiler (Source Code B2) and the Clayton Boilers (Source Codes B3 and B4).
[40 CFR 60 Subpart A]

2.7  The Permittee shall comply with all applicable provisions of 40 CFR 60 Subpart Dc - "Standards of Performance for Small Industrial-Commercial-Institutional Steam Generating Units," for operation of the Industrial Boiler (Source Code B2) and the Clayton Boilers (Source Codes B3 and B4).
[40 CFR 60 Subpart Dc; 40 CFR 60.40c(a)]

2.8  Fuel oil fired in the Industrial Boiler (Source Code B2) and the Clayton Boilers (Source Codes B3 and B4) shall be distillate fuel oil and shall not contain more than 0.5 percent sulfur, by weight. Distillate fuel oil means fuel oil that complies with the specifications for fuel oil numbers 1 or 2, as defined by the American Society for Testing and Materials in ASTM D396, "Standard Specification for Fuel Oils."
[Avoidance of 40 CFR 70; 40 CFR 60 Subpart Dc; 40 CFR 60.42c(d); 391-3-1-.02(2)(g)(2) Subsumed]

2.9  The Permittee shall not discharge or cause the discharge into the atmosphere from the Industrial Boiler (Source Code B2) any visible emissions the opacity of which is equal to or greater than 20 percent opacity (6-minute average), except for one 6-minute period per hour of not more than 27 percent opacity.
[40 CFR 60 Subpart Dc; 40 CFR 60.43c(c); 391-3-1-.02(2)(d)(3)]

2.10 The Permittee shall not discharge or cause the discharge into the atmosphere from the Clayton Boilers (Source Codes B3 or B4) any visible emissions the opacity of which is equal to or greater than 20 percent opacity (6-minute average), except for one 6-minute period per hour of not more than 27 percent opacity.
[391-3-1-.02(2)(d)(3)]

2.11 The Permittee shall not cause, let, suffer, permit or allow the emission of fly ash and/or other particulate matter from the Industrial Boiler (Source Code B2) or the Clayton Boilers (Source Codes B3 and B4) in amounts equal to or exceeding the allowable rate calculated as follows:
[391-3-1-.02(2)(d)2(ii)]

$$P = 0.5(10/R)^{0.5}$$

Where:
P = allowable weight of emissions of fly ash and/or other particulate matter in pounds per million BTU heat input
R = heat input of fuel-burning equipment in million BTU per hour

2.12 The Permittee shall operate the Industrial Boiler (Source Code B2) and the Clayton Boilers (Source Codes B3 and B4) as *gas-fired boilers* as defined in 40 CFR 63.11237. For purposes of this Permit Condition a *gas-fired boiler* includes any boiler that burns gaseous fuels not combined with any solid fuels and burns liquid fuel only during periods of gas curtailment, gas supply interruption, startups, or periodic testing on liquid fuel. Periodic testing of liquid fuel shall not exceed a combined total of 48 hours during any calendar year.
[Avoidance of 40 CFR 63 Subpart JJJJJJ]

3. **Fugitive Emissions**

    3.1 The Permittee shall take all reasonable precautions with any operation, process, handling, transportation, or storage facilities to prevent fugitive emissions of air contaminants.

4. **Process & Control Equipment**

    *General Requirements*
    4.1 Routine maintenance shall be performed on all air pollution control equipment. Maintenance records shall be recorded in a permanent form suitable and available for inspection by the Division. The records shall be retained for at least five (5) years following the date of such maintenance.

    4.2 A spare parts inventory for control equipment shall be maintained by the Permittee.

    4.3 Malfunctioning components of air pollution control systems shall be repaired as expeditiously as possible.

*40 CFR 63 Subpart O*
4.4 The Permittee shall operate the Catalytic Oxidizer (Source Code CO) at or above 300 degrees Fahrenheit, on a daily average, except during periods of startup, shutdown, or malfunction. An operating parameter deviation is defined as any daily average temperature that is below 300 degrees Fahrenheit.
[40 CFR 63 Subpart O; 40 CFR 63.363(b)(3)]

4.5 Once every 5 years, the Permittee shall replace the catalyst bed in the Catalytic Oxidizer (Source Code CO) with new catalyst material.
[40 CFR 63 Subpart O; 40 CFR 63.363(b)(4)(iii)]

## 5. Monitoring

*General Requirement*
5.1 Any monitoring system or device installed by the Permittee shall be in continuous operation except during calibration checks, zero and span adjustments or periods of repair. Maintenance or repair shall be conducted in the most expedient manner to minimize the period during which the system is out of service.

5.2 The Permittee shall maintain a spare part inventory for any monitoring system installed. A list of parts to be kept in inventory shall be kept in a form suitable for inspection by the Division for no less than five (5) years.

5.3 The Permittee shall annually inspect each boiler and follow the boiler manufacturer's maintenance procedures to ensure that serviceable components are well maintained. Records of the maintenance performed on the boilers and the maintenance procedures shall be maintained at the facility for a period of five (5) years.
[391-3-1-.02(6)(b)1]

*40 CFR 63 Subpart O*
5.4 The Permittee shall install, calibrate, maintain, and operate a system to continuously monitor and record the oxidation temperature at the outlet of the catalyst bed for the Catalytic Oxidizer (Source Code CO). The temperature monitor shall be accurate within ±5.6 degrees Celsius (±10 degrees Fahrenheit). Where such performance specification(s) exist, each system shall meet the applicable performance specification(s) of the Division's monitoring requirements. Monitoring is required only when the oxidation unit is operated.
[40 CFR 63 Subpart O; 40 CFR 63.364(c)]

**State of Georgia**
**Department of Natural Resources**
**Environmental Protection Division**

Permit No.  
3842-245-0109-S-05-0

Page 6 of 10

5.5 The Permittee shall verify the accuracy of the temperature monitor twice each calendar year with a reference temperature monitor [traceable to National Institute of Standards and Technology (NIST) standards or an independent temperature measurement device dedicated for this purpose]. During accuracy checking, the probe of the reference device shall be at the same location as that of the temperature monitor being tested. As an alternative, the accuracy temperature monitor may be verified in a calibrated oven (traceable to NIST standards).
[40 CFR 63 Subpart O; 40 CFR 63.364(c)(4)]

*40 CFR 60 Subpart Dc*

5.6 The Permittee shall install, calibrate, maintain and operate natural gas and distillate fuel oil consumption meters on each boiler. The Permittee may propose an alternative protocol for monitoring fuel usage. In lieu of installing fuel meters, the Permittee may maintain records of the total amounts of natural gas and fuel oil delivered to the facility each calendar month.
[40 CFR 60 Subpart Dc; 40 CFR 60.48c(g); Avoidance of 40 CFR Part 70 for $SO_2$ and $NO_X$]

5.7 The Permittee shall verify that each shipment of fuel oil received for combustion in any source complies with the requirements of Condition 2.8. Verification shall consist of either of the following;
[40 CFR 60 Subpart Dc; 40 CFR 60.42c(d); Avoidance of 40 CFR Part 70 for $SO_2$]

   a. Fuel oil receipts obtained from the fuel supplier certifying that the oil is distillate oil, OR

   b. Analysis of the fuel oil conducted by methods of sampling and analysis which have been specified or approved by the Division.

5.8 The Permittee shall comply with the provisions of the site-specific monitoring plan required by Condition 7.12 for the operation of the Industrial Boiler (Source Code B2).
[40 CFR 60 Subpart Dc; 40 CFR 60.47c(g)]

# 6. Performance Testing

6.1 The Permittee shall cause to be conducted a performance test at any specified emission point when so directed by the Division. The following provisions shall apply with regard to such tests:

   a. All tests shall be conducted and data reduced in accordance with applicable procedures and methods specified in the Division's Procedures for Testing and Monitoring Sources of Air Pollutants.

   b. All test results shall be submitted to the Division within sixty (60) days of the completion of testing.

  c. The Permittee shall provide the Division thirty (30) days prior written notice of the date of any performance test(s) to afford the Division the opportunity to witness and/or audit the test, and shall provide with the notification a test plan in accordance with Division guidelines.

  d. All monitoring systems and/or monitoring devices required by the Division shall be installed, calibrated and operational prior to conducting any performance test(s). For any performance test, the Permittee shall, using the monitoring systems and/or monitoring devices, acquire data during each performance test run. All monitoring system and/or monitoring device data acquired during the performance testing shall be submitted with the performance test results.

## 7. Notification, Reporting and Record Keeping Requirements

*General Requirements*

7.1 The Permittee shall maintain records of the occurrence and duration of any startup, shutdown, or malfunction in the operation of an affected facility, any malfunction of the air pollution control equipment or any periods during which a continuous monitoring system or monitoring device is inoperative. The Permittee shall retain these records for a period of at least five (5) years after the date of any such startup, shutdown, or malfunction.

7.2 [Reserved]

7.3 The Permittee shall maintain a file of all measurements, including continuous monitoring system, monitoring device, and performance testing measurements; all continuous monitoring system performance evaluations; all continuous monitoring system or monitoring device calibration checks; adjustments and maintenance performed on these systems or devices; and all other information required by this Permit. The information shall be recorded in a permanent form suitable and available for inspection and shall be retained for at least five (5) years following the date of such measurements maintenance, reports, and records.

*Boilers – Recordkeeping Requirements*

7.4 The Permittee shall retain the following records regarding fuel fired in any boiler:
[40 CFR 60 Subpart Dc; 40 CFR 60.48c(f)(1); Avoidance of 40 CFR Part 70 for $SO_2$ and $NO_X$]

  a. Shipping receipts or analyses used by the Permittee, as per Condition 5.7, to verify compliance with Condition 2.8, for distillate fuel oil fired in each boiler.

  b. A statement from each oil supplier used that the distillate fuel oil delivered complies with Conditions 2.8.

**State of Georgia
Department of Natural Resources
Environmental Protection Division**

Permit No.  
3842-245-0109-S-05-0

Page 8 of 10

    c.    Quantity of distillate fuel oil burned monthly in each boiler.

    d.    Quantity of natural gas burned monthly in each boiler.

    e.    As an alternative to paragraphs (c) and (d) of this condition, the Permittee may maintain monthly records of the amounts of natural gas and fuel oil delivered to the facility.

7.5    The Permittee shall use the fuel oil records required by Condition 7.4 to calculate monthly totals and consecutive twelve-month totals of the amount of fuel oil fired at the facility. A new twelve-month total shall be calculated for each calendar month.
[Avoidance of 40 CFR Part 70 for $SO_2$ and $NO_X$]

*Recordkeeping Requirements for 40 CFR 63 Subpart O*

7.6    The data acquisition system for the temperature monitor required by Condition 5.4 shall compute and record a daily average oxidation temperature from the 15-minute or shorter period temperature values. Strip chart data shall be converted to record a daily average oxidation temperature each day any instantaneous temperature recording falls below the minimum temperature.
[40 CFR 63 Subpart O; 40 CFR 63.364(c)]

7.7    The Permittee shall maintain records of the work practice requirements in Condition 4.5. When the catalyst is replaced the records shall contain proof of the replacement.
[40 CFR 63 Subpart O; 40 CFR 63.367(d)]

7.8    The Permittee shall maintain general records and CMS records as specified by 40 CFR 63.10(b) and (c), respectively, and Table 1 of 40 CFR 63 Subpart O.
[40 CFR 63 Subpart O; 40 CFR 63.367(a)]

*Reporting Requirements for 40 CFR 63 Subpart O*

7.9    In accordance with 40 CFR 63.10, 63.366(a), and Table 1 of 40 CFR 63 Subpart O, the Permittee shall submit the following reports:
[40 CFR 63 Subpart O; 40 CFR 63.366(a)]

    a.    Deviation reports; and

    b.    Continuous Monitoring System performance and summary reports.

Content and submittal dates for Deviation and Continuous Monitoring System Performance Reports shall be as specified in 40 CFR 63.366(a)(3).

State of Georgia
Department of Natural Resources
Environmental Protection Division

Permit No.
3842-245-0109-S-05-0

Page 9 of 10

7.10 The Permittee shall submit a written report containing any excess emissions, exceedances, and/or excursions as described in this permit and any monitor malfunctions for each semiannual period ending June 30 and December 31 of each year. All reports shall be postmarked by the 30th day following the end of each reporting period, July 30 and January 30, respectively. In the event that there have not been any excess emissions, exceedances, excursions or malfunctions during a reporting period, the report should so state. Otherwise, the contents of each report shall be as specified by the Division's Procedures for Testing and Monitoring Sources of Air Pollutants and shall contain the following:
[391-3-1-.02(6)(b)1; 40 CFR 63.10(e)]

   a. A summary report of excess emissions, exceedances and excursions, and monitor downtime, in accordance with Section 1.5(c) and (d) of the above referenced document, including any failure to follow required work practice procedures.

   b. Total process operating time during each reporting period.

   c. The magnitude of all excess emissions, exceedances and excursions computed in accordance with the applicable definitions as determined by the Director, and any conversion factors used, and the date and time of the commencement and completion of each time period of occurrence.

   d. Specific identification of each period of such excess emissions, exceedances, and excursions that occur during startups, shutdowns, or malfunctions of the affected facility. Include the nature and cause of any malfunction (if known), the corrective action taken or preventive measures adopted.

   e. The date and time identifying each period during which any required monitoring system or device was inoperative (including periods of malfunction) except for zero and span checks, and the nature of the repairs, adjustments, or replacement. When the monitoring system or device has not been inoperative, repaired, or adjusted, such information shall be stated in the report.

   f. Certification by a Responsible Official that, based on information and belief formed after reasonable inquiry, the statements and information in the report are true, accurate, and complete.

*Reporting Requirements for 40 CFR 60 Subpart Dc*
7.11 The Permittee shall submit to the Division a semiannual report, within 30 days following the end of each such period ending June 30 and December 31, regarding distillate fuel oil purchases and the firing of such oil in any boiler. The report shall contain:
[40 CFR 60 Subpart Dc; 40 CFR 60.48c(d) and (e); Avoidance of 40 CFR Part 70 for $SO_2$ and $NO_X$]

   a. The name of each fuel oil supplier and a statement from each supplier certifying that the fuel oil complies with Condition 2.8.

      b.     A certified statement signed by the Permittee that the records of fuel oil supplier certifications submitted in accordance with paragraph (a) of this condition represent all of the fuel oil fired in the boilers during the reporting period.

      c.     The 12-month rolling total, in gallons, of the amount of fuel oil burned at the facility for each month in the reporting period.

If no fuel oil was fired in a boiler during the reporting period, the report shall so state.

7.12     The Permittee shall implement and maintain a written site-specific monitoring plan for monitoring opacity from the Industrial Boiler (Source Code B2). The plan shall be subject to review and approval by the Division. The monitoring plan must include procedures and criteria for establishing and monitoring specific parameters for the boiler that are indicative of compliance with the opacity standard.
[40 CFR 60 Subpart Dc; 40 CFR 60.47c(g)]

## 8. Special Conditions

8.1     At any time that the Division determines that additional control of emissions from the facility may reasonably be needed to provide for the continued protection of public health, safety and welfare, the Division reserves the right to amend the provisions of this Permit pursuant to the Division's authority as established in the Georgia Air Quality Act and the rules adopted pursuant to that Act.

8.2     The Permittee shall calculate and pay an annual Permit fee to the Division. The amount of the fee shall be determined each year in accordance with the "Procedures for Calculating Air Permit Fees."

8.3     All Georgia Air Quality Permits previously issued to this facility, including Air Quality Permit Nos. 3842-245-0109-S-04-0 and 3842-245-0109-S-04-1, are hereby revoked in their entirety.