**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | |
|---|---|
| LORETTA BROWMAN, EVELYN ARMSTRONG, TIEESE SMITH, DEWAYNE WILLIAMS, VICTORIA SNOW, RONALD LAMPKIN, BARBARA BETTS, SHERRY HOLES, TERESSA TAYLOR, MICHAEL DUNN, ALOPECIA ARMSTRONG, PATRICIA BELL, BERNICE WILKINS, ANNIE WILLIAMS, CAROLYN WASHINGTON, SCHUYLER KNIGHT, CLARISSA COLEMAN, CHARLES JONES, MARK PUGH, SABRINA WATKINS, SUSAN DENICE KELLY, and ETHEL LENA EVANS, | |
| Plaintiffs, | Civil Action File No. |
| v. | 1:21-cv-00112 |
| KENDALL PATIENT RECOVERY U.S., LLC, a Delaware limited liability corporation, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs—22 individuals who have lived and worked near Defendant Kendall Patient Recovery's medical sterilization plant in Augusta—filed a four-count complaint arising out of Defendant's release of vast amounts of ethylene oxide ("EtO"), a known carcinogen and mutagen, into the community. Plaintiffs allege that they have suffered various forms of cancer and miscarriages as a result of Defendant's excessive emissions of EtO, and seek relief under common law theories of negligence, willful and wanton misconduct, private nuisance, and strict liability for ultrahazardous activity.

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (6), asserting that Plaintiffs lack Article III standing, that Plaintiffs fail to state a claim, that most of the Plaintiffs' claims are time-barred, and that one Plaintiff's claim is barred by the exclusivity provision of the Workers' Compensation Act. Defendant's arguments are without merit.

First, in order to establish Article III standing at the pleading stage, Plaintiffs need only allege that Defendant discharges a pollutant into the community that causes or contributes to the kinds of injuries they suffered. This they have done.

Second, while Defendant attacks various elements of each of Plaintiffs' four counts, all miss their mark. With respect to negligence, Defendant has a duty to exercise reasonable care in the use and disposal of dangerous chemicals so as to avoid injury to those nearby, a duty that is not met simply by complying with government regulations. Furthermore, Plaintiffs sufficiently allege that Defendant's breach of its duty caused their injuries. With respect to willful and wanton misconduct, Plaintiffs sufficiently allege that Defendant acted with the requisite mental state—conscious or reckless indifference—when it discharged vast amounts of EtO in an area where Plaintiffs lived and worked despite wide-spread knowledge that EtO is dangerous to humans. With respect to nuisance, Georgia law expressly states that "the fact that the act done may otherwise be lawful shall not keep it from being a nuisance," O.C.G.A. § 41-1-1, undermining again Defendant's attempt to hide behind its purported compliance with government regulations. And with respect to Plaintiffs' strict liability claim for ultrahazardous activity, Georgia law treats the question of whether a particular activity is abnormally dangerous as one for a jury, precluding dismissal here.

Third, Plaintiffs' personal injury claims cannot be dismissed as time-barred. Even if they knew of their injuries more than two years before bringing suit, their claims didn't accrue until

they were aware of their injuries *and* that Defendant caused them. There is nothing apparent from the face of the complaint suggesting that Plaintiffs knew or should have known of Defendant's role in their injuries more than two years before commencing this action. And in any event, the statute of limitations is tolled until Plaintiffs are no longer being exposed to Defendant's toxic emissions, meaning that for Plaintiffs who still live near the plant, the clock hasn't even started.

Finally, Plaintiff Alopecia Armstrong's claims are not subject to the exclusive jurisdiction of the Workers' Compensation Board. Her injury—breast cancer—is not an "occupational disease" under the Workers' Compensation Act both because it is an ordinary disease of life to which the general public is exposed, and because she alleges that she was exposed to Defendant's EtO outside of her employment.

For all these reasons, and as discussed in more detail below, Defendant's motion to dismiss should be denied.

## BACKGROUND

Defendant runs an industrial medical sterilization plant in Augusta that has been in operation since at least 1968. Dkt. 1 ¶¶ 1, 14.[1] Medical product sterilization can be done in a number of ways that do not involve EtO, such as heat sterilization, nitrogen dioxide sterilization,

---

[1]     Defendant asserts that Kendall Patient Recovery U.S., LLC, didn't exist until 2017, and that "Plaintiffs do not allege any facts explaining how KPR could be liable for conduct and injuries predating its existence." Dkt. 10 at 2. But the fact that Defendant may not have existed in its current corporate form until 2017 does not absolve it of liability for conduct taken in prior corporate forms. Georgia recognizes successor liability in several situations, including where the successor "is a mere continuation of the predecessor corporation." *Bussey v. Modern Welding Co.*, 245 F. Supp. 2d 1269, 1275-76 (S.D. Ga. 2003) (quoting *Bullington v. Union Tool Corp.*, 328 S.E.2d 726 (Ga. 1985)). To the extent Defendant's assertion can be deemed an argument, it is undeveloped and unsupported, and thus not a basis for dismissing the complaint. *See Copeland v. Ga. Dep't of Juv. Just.*, No. 12-cv-24, 2013 WL 1296778, at *10 n.16 (M.D. Ga. Mar. 27, 2013) (refusing to consider a one-sentence argument).

and ionizing radiation. *Id.* ¶ 146. Defendant, however, chose to use EtO in its sterilization process. *Id.* ¶ 1.

To sterilize medical equipment using EtO, the equipment is placed in a gas chamber. *Id.* ¶ 13. After air is pumped out of the chamber, EtO is introduced and allowed to diffuse into the products for several hours. *Id.* The EtO is subsequently pumped out of the chamber, and any remaining EtO is allowed to slowly dissipate from the equipment. *Id.* Throughout the process, EtO is emitted from the sterilization plant in both "controlled" emissions (through known points of exit such as smokestacks or vents) and "fugitive" emissions (through leaky seals, old or malfunctioning equipment, operator error, and other untracked sources). *Id.* ¶ 15. Defendant's facility has released literally tons of EtO into the community for decades. *Id.* ¶¶ 36-43. For example, in 1990 alone, the plant released at least 83,000 pounds of EtO through stack emissions, and at least 21,000 pounds of EtO through fugitive emissions. *Id.* ¶ 40 (Figure 2).

EtO is an odorless, colorless gas that is readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body. *Id.* ¶ 17. It is also carcinogenic and mutagenic. *Id.* Exposure to EtO is linked to an increased risk of lymphohematopoietic cancers, such as non-Hodgkin's lymphoma, myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and brain; and reproductive and developmental impairments, including an increased rate of miscarriages and infertility. *Id.* ¶ 24.

Plaintiffs are 22 individuals who have lived and worked near Defendant's facility, most fewer than five miles away. *Id.* ¶¶ 48, 52, 56, 60, 64, 68, 72, 76, 81, 85, 89, 93, 98, 102, 106, 110, 114, 118, 122, 126, 130, 134. Each suffers from a form of cancer, has had a miscarriage, or both. *Id.* ¶¶ 50 (breast cancer), 54 (breast cancer), 58 (lymphoma), 62 (acute promyelocytic leukemia), 66 (breast cancer), 70 (prostate cancer), 74 (breast cancer), 78 (breast cancer), 83

(miscarriage), 87 (B-cell lymphoma), 91 (breast cancer), 95 (miscarriage), 100 (breast cancer and ovarian cancer), 104 (colon cancer), 108 (miscarriage), 112 (chronic lymphocytic leukemia), 116 (breast cancer), 120 (myeloma), 124 (glioblastoma multiforme), 128 (five miscarriages), 132 (breast lump, colon cancer, uterine tumor, and two miscarriages), 136 (breast cancer). Plaintiffs believe that their injuries were caused by exposure to EtO emitted by Defendant's medical sterilization plant and filed this suit accordingly.

## ARGUMENT

## I.   PLAINTIFFS HAVE ARTICLE III STANDING.

Defendant first challenges Plaintiffs' Article III standing to proceed with this litigation in federal court. In order to have standing, Plaintiffs must establish (1) that they suffered an injury-in-fact, (2) caused by Defendant, (3) that can be redressed by the relief requested. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1080 (11th Cir. 2002). The required showing depends on the stage of the litigation, and at the pleading stage, "general factual allegations" suffice. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). *See also Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1038-39 (11th Cir. 2008) ("Because this [Article III standing] issue reaches us on a motion to dismiss, we must presume that a plaintiff's allegations are sufficient to establish the facts alleged.").

Defendant challenges only the causation element of standing.[2] To satisfy Article III's causation requirement, Plaintiffs "must allege that their injuries are connected with the conduct

---

[2]      The other two elements—injury and redressability—are easily satisfied here. Plaintiffs allege that they have suffered cancers and miscarriages, and that they continue to be exposed to EtO. These are Article III injuries-in-fact that can be redressed by the damages and injunctive relief they seek. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) (exposure to a toxic substance and resulting physical injuries—such as cancer—are well-established Article III injuries-in-fact); *Farese v. Scherer*, 342 F.3d 1223, 1230 (11th Cir. 2003) (damages and injunctive relief can redress past and ongoing injuries).

of which they complain." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (internal quotations and alterations omitted). This is a low bar; "proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Id.* (internal quotations and alterations omitted).

In the context of harmful emissions, "a plaintiff need not prove that their injury can be traced to specific molecules of pollution emitted by the alleged polluter." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1280 (11th Cir. 2015). "It is enough that a plaintiff show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." *Id.* (internal quotations omitted); *see also Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 98 F. Supp. 3d 1279, 1298 (S.D. Ga. 2015); *Mrosek v. Peachtree City*, No. 12-cv-0094, 2014 WL 11279463, at *4 (N.D. Ga. Dec. 22, 2014), *aff'd*, 631 F. App'x 757 (11th Cir. 2015). That's exactly what the Plaintiffs allege here. They allege that EtO causes cancer and miscarriages, that Defendant's sterilization facility discharged literal tons of EtO, and that Plaintiffs lived and worked nearby—in other words, that Defendant emitted a pollutant that causes or contributes to the kinds of injuries suffered by Plaintiffs in the relevant geographic area. That's enough for Article III standing.

Defendant asserts that there are other potential sources of EtO to which Plaintiffs may have been exposed. But even assuming this were true,[3] the existence of EtO sources in addition to Defendant's facility does not defeat standing. With respect to non-industrial sources—the wet soil and food products and auto exhaust to which Defendant points—those sources are unlikely

---

[3]    In support of its assertion that there are other potential sources of EtO, Defendant points to a map attached to their complaint. Dkt. 10-7. Defendant fails to explain, however, (1) why this Court can consider the map on a motion to dismiss, and (2) if it can, what conclusions are to be drawn from it.

to cause significant exposure to EtO. U.S. Department of Health and Human Services, Agency

for Toxic Substances and Disease Registry, *Toxicological Profile for Ethylene Oxide* at 1 (Sept.

2020 Draft), available at https://www.atsdr.cdc.gov/toxprofiles/tp137.pdf ("You are not likely to

be exposed to high levels of ethylene oxide in the general environment."). Rather, it's living or

working near facilities that use EtO—such as Defendant's sterilization facility—that results in

elevated exposure. *Id.* at 1, 114. And even if there were other industrial users of EtO operating in

the vicinity, that fact would not undermine traceability. As noted above, in order to establish

standing, Plaintiffs need allege only that Defendant emitted a pollutant that "contributes to" their

injuries. *Black Warrior*, 781 F.3d at 1280. They do not need to rule out other potential sources of

EtO to establish standing. *New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734

F. Supp. 2d 1326, 1334 (N.D. Ga. 2010) ("Plaintiff doesn't need to rule out other sources of

[pollution]…. To show traceability, the Plaintiff only needs to show that the Defendants are a

source—not the only source—of [the complained-of pollution].");  *Sierra Club, Lone Star*

*Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996) ("[T]he fairly traceable

element does not require that the plaintiffs show to a scientific certainty that the defendant's

effluent, and the defendant's effluent alone, caused the precise harm suffered by the plaintiffs….

[I]t is sufficient for Sierra Club to show that Cedar Point's discharge of produced water

*contributes* to the pollution[.]") (internal quotations and alterations omitted); *Nw. Env't Def. Ctr.*

*v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 967 (D. Or. 2006) (same re: air emissions).

        Defendant also argues that "the studies Plaintiffs rely on do not support their conclusion

that KPR's emissions increased cancer risks at Plaintiffs' homes or workplaces" and that "the

primary driver of cancer risks in the census tract where the facility is located is formaldehyde,

not EtO." Dkt. 10 at 6-7 (emphasis omitted). But "the scientific certainty that [Defendant] seeks is not necessary for purposes of establishing standing." *Jones Creek*, 98 F. Supp. 3d at 1298. Again, "all [Plaintiffs] must show is '"that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged" in the specific geographic area of concern,' and this [they] ha[ve] done." *Id.* (quoting *Black Warrior*, 781 F.3d at 1280).

The only traceability case cited by Defendant, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), is not helpful here. That case involved federal regulations enacted under the Telephone Consumer Protection Act that prohibit calling individuals on the national Do Not Call registry or who have previously informed the caller that they do not wish to be called. *Id.* at 1265. In *Cordoba*, the court held that individuals who were not on the Do Not Call registry and who had not previously requested that defendants not call them lacked standing because there was "no remotely plausible causal chain" linking those individuals' alleged injuries—receiving unwanted telephone calls—with defendants' alleged violations—calling individuals on the Do Not Call registry and/or failing to maintain a required internal do-not-call list. *Id.* at 1271-72. In contrast, the court held that individuals on the Do Not Call registry or who had previously requested that defendants not call them had "no problem meeting the traceability requirement." *Id.* at 1271.

This Court should likewise find that Plaintiffs here have no problem meeting the traceability requirement. Plaintiffs allege that Defendant's sterilization facility emitted large amounts of EtO into the community where they live and work, and that EtO causes or contributes to the kinds of injuries they sustained. For standing purposes—and certainly at the pleading stage—this is enough.

## II.   PLAINTIFFS STATE CLAIMS FOR NEGLIGENCE, WILLFUL AND WANTON MISCONDUCT, NUISANCE, AND ULTRAHAZARDOUS ACTIVITY.

Defendant next argues that Plaintiffs' complaint should be dismissed for failure to state a claim. In order to survive such a motion, Plaintiffs need simply "to plead in [their] complaint 'a short and plain statement of the claim showing that [they are] entitled to relief,' Fed. R. Civ. P. 8(a)(2), sufficient to give fair notice to [Defendant] of what the claim was and the grounds upon which it rest[s]." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260-61 (11th Cir. 2015). Here, Plaintiffs have done exactly that: they allege that they live and work near Defendant's sterilization facility, that the facility emitted large amounts of EtO for decades, that EtO is carcinogenic and causes miscarriages, and that Plaintiffs have been diagnosed with cancer and have miscarried pregnancies. Based on these allegations, Plaintiffs assert claims for negligence, willful and wanton misconduct, nuisance, and ultrahazardous activity. Consistent with federal pleading rules and Eleventh Circuit precedent, this is sufficient to give fair notice to Defendant of what Plaintiffs' claims are and the grounds upon which they rest.

Defendant makes various arguments as to each of Plaintiffs' four claims, but as discussed below, all are without merit.

### A.   Plaintiffs state a claim for negligence.

To state a claim for negligence under Georgia law, a plaintiff must allege sufficient facts to establish:

(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Paws Holdings, LLC v. Daikin Indus., Ltd.*, No. CV 116-058, 2017 WL 706624, at *12 (S.D. Ga. Feb. 22, 2017) (internal quotations and alteration omitted). Here, Defendant asserts that Plaintiffs have failed to sufficiently allege the duty and causation elements.

> **1.    When using chemicals on its property that pose a risk of harm to persons not on its property, Defendant has a duty of reasonable care.**

As a general matter, "[t]he possessor of land has a duty of reasonable care for … conduct on the land that poses a risk of physical harm to persons … not on the land." Restatement (Third) of Torts: Physical & Emotional Harm § 54(a). Georgia courts have endorsed the Second Restatement's predecessor to this section, *see, e.g.*, *Black v. City of Cordele*, 293 S.E.2d 557, 559-60 (Ga. Ct. App. 1982) (citing Restatement (Second) of Torts § 364); *S. Bell. Tel. & Tel. Co. v. Conyers Toyota, Inc.*, 380 S.E.2d 296, 298 (Ga. Ct. App. 1989) (same), and have expressed the rule in various ways:

> A landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises which may and does inflict injury on an adjoining owner is liable for the damage so caused.

*Howell Gas of Athens, Inc. v. Coile*, 146 S.E.2d 145, 149 (Ga. Ct. App. 1965).

> [A]fter the occupier or possessor knows or should know of the danger of the artificial condition of the premises to others outside the land, and fails to exercise reasonable care and diligence to make the condition reasonably safe either by removing the danger or by giving adequate warning or by using other effective safeguards, the occupant or possessor becomes liable to persons outside the land for injuries which are the proximate result of such artificial conditions.

*Black*, 293 S.E.2d at 559.

Consistent with these principles, one using dangerous chemicals on their property—like Defendant here—has "a duty to exercise reasonable care in their use and disposal of" the chemicals so as to avoid injury to those nearby. *Johnson v. 3M*, No. 20-cv-8, Slip Op. at 109-10 (N.D. Ga. Sept. 20, 2021).

Defendant suggests that any duty it owes extends "only to the premises and approaches to KPR's facility and only to invitees." Dkt. 10 at 19. But as the cases above demonstrate, that's not right. Whatever duties Defendant may have toward invitees on its property, it also owes a duty to exercise reasonable care in the use of its property so as not to injure "persons outside the land." *Black*, 293 S.E.2d at 559.

Defendant also argues that it has no duty to protect against or warn of unforeseeable harms, and that the harms suffered by Plaintiffs were not foreseeable. Plaintiffs agree that duty arises out of foreseeable risks, *see, e.g.*, *Worthy v. Beautiful Rest., Inc.*, 556 S.E.2d 185, 188 (Ga. Ct. App. 2001); *In re Arby's Rest. Grp. Inc. Litig.*, No. 17-cv-0514, 2018 WL 2128441, at *3-4 (N.D. Ga. Mar. 5, 2018), but disagree that the risks of EtO emissions were unforeseeable. Plaintiffs allege that in the 1970's and early 80's, the National Institute of Occupational Safety and Health ("NIOSH") reported on the carcinogenic, mutagenic, and reproductive hazards of EtO, and that "ethylene oxide's negative health effects were widely disseminated to industrial users and emitters of the chemical." Dkt. 1 at ¶¶ 18-20, 27. In 1985, the U.S. Department of Health and Human Services ("HHS") classified EtO as reasonably anticipated to be a human carcinogen, *id.* ¶ 21, and the U.S. Environmental Protection Agency ("EPA") issued a Notice of Intent to list EtO as a hazardous air pollutant, *id.* ¶ 28. The EPA's Notice pointed to a risk of forty-seven additional cases of cancer per year in areas surrounding EtO sterilization facilities. *Id.* By the early 1990's, NIOSH had published one of the largest epidemiological studies of EtO, finding sufficient evidence to support a causal link between EtO exposure and increased mortality from various forms of cancer. *Id.* ¶ 22. As a result of these findings, the World Health Organization ("WHO") in 1994 listed EtO as a Group 1 human carcinogen (its highest risk classification), and in 2000, HHS revised its classification of EtO to "known to be a human

carcinogen." *Id.* ¶ 23. While Defendant picks nits with these allegations, "[its] argument on foreseeability is more appropriate after discovery at the summary judgment stage or at trial." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336-37 (11th Cir. 2012). It is certainly plausibly alleged that the risks of cancer and miscarriages from EtO emissions were foreseeable to Defendant.

Finally, Defendant asserts that it complied with all governmental regulations regarding EtO emissions, and that it was unforeseeable that EtO emissions within regulatory levels would cause harm. But Defendant does not dispute that its sterilization facility has exceeded Georgia's Acceptable Ambient Concentration for ethylene oxide. *See* dkt. 1 ¶ 44. Instead, it tries to split hairs about whether the state's acceptable level is "a regulatory limit" or merely "guidance." Dkt. 10 at 13. Regardless, even assuming that Defendant complied with all governmental regulations regarding EtO emissions, regulatory compliance is not a free pass from liability—and certainly not at the pleading stage. *Adinolfe*, 768 F.3d at 1174 ("[W]hile the applicable regulatory standard may be instructive for a trier of fact as evidence of what the government deems safe for the public, it does not amount to an all-purpose benchmark for determining as a matter of law how much one can reasonably [pollute], much less a threshold issue that plaintiffs must preemptively address at the pleading stage[.]") (citation omitted).[4]

---

[4]     Though *Adinolfe* was decided under Florida law, Georgia law is in accord. *See, e.g.*, *Doyle v. Volkswagenwerk Aktiengesellchaft*, 481 S.E.2d 518, 521 (Ga. 1997) ("[C]ompliance with federal standards or regulations is a factor for the jury to consider in deciding the question of reasonableness …. It does not render a [defendant's conduct] immune from liability."); *Associated Health Sys., Inc. v. Jones*, 366 S.E.2d 147, 151-52 (Ga. Ct. App. 1988) ("[C]ompliance with a legislative enactment will not prevent a finding of negligence where a reasonable person would have taken additional precautions.").

Simply put, Plaintiffs have plausibly alleged that harm from EtO exposure was foreseeable, and, in light of this risk, Defendant had a duty of reasonable care when using the chemical on its property so as not to harm others nearby.

### 2.      Plaintiffs plausibly allege causation.

Defendant's attack on causation fares no better. As discussed above with respect to standing, Plaintiffs allege that EtO causes cancer and miscarriages, that Defendant's sterilization facility discharged large amounts of EtO, that Plaintiffs lived and worked nearby, and that Plaintiffs have suffered cancer and miscarriages. That is enough at the pleading stage to "set forth a plausible causal chain" connecting Defendant's conduct with Plaintiffs' injuries. *Adinolfe*, 768 F.3d at 1175 (allegations that defendant released contaminants on its property, that the contaminants reached residential area where plaintiffs lived, and that plaintiffs and others in the area had cancer were sufficient to plead causation). *See also Johnson*, Slip Op. at 116-17 (similar allegations were "sufficient to establish a jury question on whether Defendants' discharges were the proximate cause of Plaintiff's injury," defeating motion to dismiss). As in *Adinolfe* and *Johnson*, the facts alleged here "are plausible and raise a reasonable expectation that discovery could supply additional proof of [Defendant's] liability." *Chaparro*, 693 F.3d at 1337.

Defendant complains that Plaintiffs fail to specify things like the "area meaningfully affected" by its EtO emissions or that its emissions "meaningfully increased EtO exposures above natural variability." Dkt. 10 at 20. Defendant also argues that Plaintiffs have failed to rule out other possible carcinogens as the source of their injuries. *Id.* But on a motion to dismiss— before any expert or other discovery has occurred—this Court simply isn't equipped to evaluate these kinds of complex scientific questions likely to drive ultimate resolution of the causation issue. *Adinolfe*, 768 F.3d at 1175 ("In the absence of a developed factual record, or undisputed

matters which can be judicially noticed, a district court is not equipped to make plausibility determinations on complex scientific issues such as the direction in which water in an aquifer flows, or whether other sources—like water chlorination—better account for the levels of contamination alleged to exist on certain property."). *See also Jerue v. Drummond Co.*, No. 17-cv-587, 2018 WL 7461683, at \*12 (M.D. Fla. Apr. 19, 2018) ("[I]ssues of causation are typically not susceptible to resolution at the motion to dismiss stage.") (emphasis omitted).[5] Though Plaintiffs may ultimately be unable to meet their burden of proof at summary judgment or trial as to whether their cancers and miscarriages were caused by Defendant's decades-long emission of EtO in an area where they live and work, "there is no 'obvious alternative explanation' that a court, drawing on its 'judicial experience and common sense,' can rely on at the motion-to-dismiss stage to conclude that plaintiffs' explanation is implausible." *Adinolfe*, 768 F.3d at 1175-76 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

Defendant's citation to *Lemley v. Red Bull North America, Inc.*, No. 16-cv-080, 2016 WL 7197442 (S.D. Ga. Dec. 9, 2016), doesn't help it. In that case, the court found that causation wasn't plausibly alleged because the plaintiff failed to allege when the decedent was exposed to defendant's product:

> It would have been one thing for the complaint here to have alleged, for instance, that Wade died of a heart attack shortly after consuming Red Bull. But, for all the complaint alleges, Lemley's case could just as readily be based on Wade's having drunk two cans of Red Bull when the drink was first introduced in 1987 then dying nearly three decades later.

---

[5]   In *Jerue*, the court held that "Plaintiffs' allegations that [defendant] discharged hazardous substances … onto the land it later developed … knowing that radiation would emit into homes built on the properties, and yet failed to either disclose the presence of those hazardous substances and/or undertake appropriate remedial efforts, thereby causing Plaintiffs … to suffer … personal injuries" stated a "facially plausible claim for negligence." 2018 WL 7461683, at \*12.

14

*Id.* at *2-3 (internal citation omitted). There is no such defect here, where Plaintiffs allege that Defendant has discharged EtO for decades in the area in which they live and work. The other cases cited by Defendant are doubly unhelpful because they involve summary judgment motions in state court, not—as here—a motion to dismiss in federal court. *See Palm Beach Golf Ctr.*, 781 F.3d at 1260 ("The rules of procedure that apply in federal cases—even those in which the controlling substantive law is that of a state—are the Federal Rules of Civil Procedure.") (internal quotation omitted); *Cassady v. Walker*, No. CV 109-128, 2010 WL 4867529, at *6 n.5 (S.D. Ga. Oct. 15, 2010), *report and recommendation adopted*, 2010 WL 4867524 (S.D. Ga. Nov. 23, 2010) ("While the issue may arise again at summary judgment, Plaintiff's allegations … are sufficient to avoid dismissal at the pleading stage.").

In short, Defendant had a duty to exercise reasonable care when using dangerous chemicals on its property, and Plaintiffs allege that it breached that duty, causing injury to them. Plaintiffs' complaint states a claim for negligence.

### B.    Plaintiffs state a claim for willful and wanton misconduct.

Defendant next seeks dismissal of Plaintiffs' claim for willful and wanton misconduct. Other than asserting that this claim fails for the same reasons as Plaintiffs' negligence claim, Defendant's only argument is that Plaintiffs purportedly fail to allege that Defendant acted with the required mental state. Defendant is wrong.

"Under Georgia law, willful and wanton conduct is conduct which shows that entire absence of care which would raise the presumption of conscious indifference, or that with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury." *Majors v. Morgan Tire & Auto, Inc.*, No. CV 104-047, 2005 WL 2709634, at *12 (S.D. Ga. Oct. 21, 2005) (internal quotations

omitted). Here, Plaintiffs' allegations that Defendant discharged vast amounts of EtO in an area where Plaintiffs lived and worked, despite wide-spread knowledge at the time that EtO was dangerous to humans, raises a plausible inference that Defendant acted with conscious or reckless indifference to the consequences of its actions. As another court explained in words that are equally applicable here:

> Plaintiff plausibly alleges that Defendant engaged in willful and wanton conduct—acting with the heightened mental state of conscious disregard or utter indifference. The Complaint asserts the NIOSH, the HHS, the WHO, and the EPA all classify EtO as a highly toxic substance and known human carcinogen. Therefore, it is plausible that Defendant—as a manufacturer of EtO—knew that its operations posed a potential danger to the surrounding community. And it is further plausible that Defendant consciously disregarded those risks to the health, safety, and well-being of that community by failing to employ safe methods, use alternative manufacturing procedures, locate manufacturing in an unpopulated area, and warn neighboring residents.

*Letart v. Union Carbide Corp.*, 461 F. Supp. 3d 391, 399 (S.D.W. Va. 2020). Plaintiffs state a claim for willful and wanton misconduct.

### C.  Plaintiffs state a claim for nuisance.

Defendant next argues that Plaintiffs' nuisance claim must be dismissed because "a nuisance claim cannot be predicated on an act authorized by and performed in accordance with the law." Dkt. 10 at 23. Defendant is mistaken.

Under Georgia law, "[a] nuisance is anything that causes hurt, inconvenience, or damage to another *and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance*." O.C.G.A. § 41-1-1 (emphasis added). Indeed, the Georgia Supreme Court has rejected precisely the argument Defendant makes here—that compliance with a permit issued by the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD") precludes a nuisance suit. In *Galaxy Carpet Mills, Inc. v. Massengill*, the court found that while "emissions from the appellant's coal-fired boilers might be within the particulate-matter and

opacity requirements of the appellant's permit" issued by the Georgia EPD, it could "nonetheless constitute a nuisance as to the appellees by reason of the fact that the pollutants are being deposited on their property." 338 S.E.2d 428, 429-30 (Ga. 1986). *See also Superior Farm Mgmt., L.L.C. v. Montgomery*, 513 S.E.2 215, 218 (Ga. 1999) ("[S]tate environmental laws … do not attempt to alter general rules of law with regard to private nuisances and will not … impede a private individual in an action to enjoin a nuisance.") (citing *Galaxy Carpet Mills*, 338 S.E.2d 428). A recent decision from the Northern District of Georgia rejected a similar argument, holding that "[defendants'] assertion of lawful conduct does not preclude Plaintiff's nuisance claim." *Johnson*, Slip Op. at 141-42. Like here, the defendants in *Johnson* argued that their pollution could not be deemed a nuisance because they were acting in accordance with authorized permits. *Id.* The court called that argument "plainly without merit" because "it cuts against the plain language of Georgia's statutory definition of nuisance," namely, the statutory provision stating that "the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." *Id.* (quoting O.C.G.A. § 41-1-1).

Defendant quotes *City of Douglasville v. Queen* for the proposition that "[t]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience, or damage of another." Dkt. 10 at 23 (quoting *City of Douglasville v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999)). But "the quotation relied upon by the defendant says much less than might first appear." *Banks v. City of Brunswick*, 529 F. Supp. 695, 698 (S.D. Ga. 1981) *aff'd sub nom. Banks v. Brunswick*, 667 F.2d 97 (11th Cir. 1982). "In fact, it merely states that what a [defendant] does is legal unless it is illegal, i.e., a nuisance, since under Georgia law the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." *Id.*

(internal quotation omitted). In other words, an act may be lawful up until the point it creates a condition causing hurt, inconvenience, or damage to another—a nuisance. *See, e.g.*, *Sumitomo Corp. of Am. v. Deal*, 569 S.E.2d 608, 613-14 (Ga. Ct. App. 2002) ("[T]hough [defendant's] construction of the detention pond was arguably done in a lawful manner, that fact did not prevent the pond from becoming a nuisance when the increased water flow caused hurt and inconvenience to [plaintiffs] and their neighbors."); *Vulcan Materials Co. v. Griffith*, 114 S.E.2d 29, 34 (Ga. 1960) ("While as a general rule one is not liable in damages for the natural results from a lawful, proper, and non-negligent use of his property, yet where, as here, such uses put in motion conditions that go upon the lands of another and there damage his health or property, such injured person is entitled to relief in equity to abate or terminate such injuries which are alleged to be irreparable and continuous.") (internal citations omitted) *overruled on other grounds by E. Lands, Inc. v. Floyd Cty.*, 262 S.E.2d 51 (Ga. 1979); *Banks*, 529 F. Supp. at 698 ("A condition may be illegal when it is objectionable only on grounds of causing 'hurt or inconvenience,' i.e., when it is a nuisance.").

### D. Plaintiffs state a claim for ultrahazardous activity.

Lastly, Defendant moves to dismiss Plaintiffs' strict liability claim for ultrahazardous activity, arguing that "Georgia has only found a few activities, none of which are analogous to emitting EtO, that are inherently dangerous to justify strict liability." Dkt. 10 at 24. But while "Georgia courts have provided little guidance as to what constitutes an abnormally dangerous activity," there is "nothing in applicable precedent either expressly or implicitly limiting the doctrine of strict liability for abnormally dangerous activities to those activities … [that] have 'historically' been recognized as such." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1303 (N.D. Ga. 2005), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007). To

the contrary, Georgia treats the question as one for a jury. *Id.* ("[T]he Georgia Court of Appeals

has appeared … to hold that, in many instances, the question of what constitutes an abnormally

dangerous activity will be one of fact for the jury to decide."); *Combustion Chems., Inc. v.

Spires*, 433 S.E.2d 60, 63 (Ga. Ct. App. 1993) ("An appropriate charge to the jury in this case

would simply have instructed the jury that if they found defendant conducted an abnormally

dangerous activity which proximately caused plaintiffs' injuries, then defendant should be held

liable for those injuries."). Indeed, in *Combustion Chemicals*, the Georgia Court of Appeals held

that it *couldn't hold* as a matter of law one way or the other whether a particular activity was

abnormally dangerous. 433 S.E.2d at 62 ("[W]e cannot hold as a matter of law that the activity of

holding highly acidic water in ponds which may pollute streams running through the property of

adjoining landowners is not a dangerous activity. Neither can we conclude, based on the

evidence produced in this case, that the activity *is* dangerous as a matter of law.").

So too here, this Court should not—on a 12(b)(6) motion—hold as a matter of law that

Defendant's use of EtO at its sterilization facility is not an ultrahazardous activity. Plaintiffs have

plausibly alleged that Defendant's operations result in vast emissions of a known carcinogen into

the nearby community. That is enough at this stage. *See, e.g.*, *Letart*, 461 F. Supp. 3d at 399 ("I

find it plausible, based on the Complaint, that Defendant's manufacturing of EtO is abnormally

dangerous[.]").[6]

---

[6]      Though *Letart* was premised on West Virginia law and the Restatement of Torts, Georgia
also looks to the Restatement in this area. *Gullock v. Spectrum Scis. & Software, Inc.*, 146 F.
Supp. 2d 1364, 1375 (M.D. Ga. 2001) ("In the absence of any other state guidance, the Court
finds that the Supreme Court of Georgia would apply the Restatement test to determine whether
Spectrum's activities were abnormally dangerous."). Furthermore, this case presents an even
stronger claim than *Letart* for ultrahazardous activity, because while *Letart* involved a
*manufacturer* of EtO, Defendant here is a *user* of EtO. *See Parker*, 377 F. Supp. 2d at 1303-04
(distinguishing between "mere manufacture of a dangerous product"—which may not be

Defendant points to a recent decision from the State Court of Cobb County for the proposition that Georgia does not recognize EtO use as an ultrahazardous activity. Dkt. 10 at 24 (citing *Kurt v. Sterigenics U.S., LLC*, No. 20-A-3432 (Ga. St. Ct. July 15, 2021)). But that decision fails to address (or even cite) *Combustion Chemicals*, and on an issue of state law where the Georgia Supreme Court has not spoken, this Court must follow the Georgia Court of Appeals over the county courts. *Pendergrast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010). As with their claims for negligence, willful and wanton misconduct, and nuisance, Plaintiffs' complaint states a claim for ultrahazardous activity.

## III.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Apart from the merits, Defendant argues that the claims of all but two of the Plaintiffs (Michael Dunn and Charles Jones) are barred by the two-year statute of limitations for personal injuries, O.C.G.A. § 9-3-33. To be clear, Defendant does not—nor could it—argue that Plaintiffs' private nuisance claims are time-barred. Defendant's emission of EtO is a "continuing"—rather than a "permanent"—nuisance, and thus, each emission is "a fresh nuisance for which a fresh action will lie." *Stroud v. Hall Cnty.*, 793 S.E.2d 104, 109 (Ga. Ct. App. 2016).[7]

As for the personal injury claims, "dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (internal quotations

---

sufficient to establish strict liability for ultrahazardous activity—and *use* of such products—which is).

[7]      "A permanent nuisance is one in which the destruction or damage is at once complete upon the completion of the act by which the nuisance is created…. A continuing nuisance, on the other hand, is one which can and should be abated by the person erecting or maintaining it." *Stroud*, 793 S.E.2d at 109 (internal quotations omitted).

omitted). With respect to the four Plaintiffs who allege injuries in 2019 (Ronald Lampkin, Teressa Taylor, Bernice Wilkins, and Mark Pugh), those claims cannot be dismissed as time-barred because it is not apparent from the face of the complaint that they accrued more than two years before the action was brought. While Defendant argues that "these claims are barred *if* they occurred before August 3, 2019," dkt. 10 at 9 (emphasis added), the pleadings do not establish that that is the case.

In any event, regardless of when Plaintiffs' injuries occurred, their claims cannot be dismissed as untimely because it's not apparent from the face of the complaint that any of the Plaintiffs knew more than two years before filing suit that their injuries were caused by Defendant's conduct. This case involves "'continuous torts,' where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct." *Broughton v. United States*, No. CV408-248, 2010 WL 11534491, at *1 (S.D. Ga. Feb. 1, 2010). In such a case, "[a] cause of action will not accrue … until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *King v. Seitzingers, Inc.*, 287 S.E.2d 252, 254 (Ga. Ct. App. 1981). In other words, a cancer diagnosis or miscarriage is not enough to start the clock. It is only when a plaintiff discovers both her injury *and* that it was likely caused by defendant's conduct that the statute of limitations begins to run. *Id.* at 255; *Andel v. Getz Servs., Inc.*, 399 S.E.2d 226, 228 (Ga. Ct. App. 1990) ("Plaintiffs could not maintain an action for damages for a particular illness allegedly caused by the chemical, until they knew or should have known through the exercise of reasonable diligence not only that they had the particular illness but that said illness was caused by the chemical.") (internal quotations and alterations omitted);

*Anderson v. Sybron Corp.*, 353 S.E.2d 816, 816-18 (Ga. Ct. App. 1983), *aff'd* 310 S.E.2d 232 (Ga. 1983) (same re: injury caused by EtO exposure).

Here, whether or not Plaintiffs knew of their injuries prior to 2019, there's no indication—certainly nothing apparent from the face of the complaint—that they knew or should have known that Defendant's EtO emissions were the cause of it at the time. To the contrary, Plaintiffs allege that they did *not* know about Defendant's toxic emissions, dkt. 1 ¶¶ 5, 16, 43 (Plaintiffs were "unknowingly" exposed to Defendant's EtO for decades), and that at the time of their injuries, they were not aware that they were caused by Defendant's emissions, *id.* ¶¶ 51, 55, 59, 63, 67, 71, 75, 79, 84, 88, 92, 96, 101, 105, 109, 113, 117, 121, 125, 129, 133, 137. Thus, at least at the pleading stage, this Court cannot say as a matter of law that Plaintiffs' claims accrued more than two years prior to their bringing this action. *Dollar v. Monsanto Co.*, No. 20-cv-78, 2021 WL 2300788, at \*5 (S.D. Ga. June 4, 2021) (denying motion to dismiss where plaintiff alleged she did not know that husband's death was caused by exposure to Defendant's products until one year before suit); *King*, 287 S.E.2d at 255 ("whether [plaintiff] knew or through reasonable diligence should have discovered that his injury resulted from [defendant's] action before or after the two years preceding the filing of his suit" is a question for the ultimate trier of fact).

Additionally, even if Plaintiffs' claims accrued outside the limitations period, the statute of limitations on a continuous tort claim is tolled until the plaintiff's exposure to the ongoing hazard ends—either through defendant's abatement of it, defendant's warning plaintiff of it, or plaintiff's removal from it. *See Ambling Mgmt. Co. v. Purdy*, 640 S.E.2d 620, 625-26 (Ga. Ct. App. 2006) ("[T]he statute of limitation did not begin to run against [plaintiff] until the exposure was eliminated, i.e., either [plaintiff] removed herself from exposure to the hazard or [defendant]

took some measure to abate the contamination, warn [plaintiff] of the hazard, or remove her from it."); *Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972) ("[T]he statute of limitation does not commence to run under these circumstances until such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard."). Thus, for the Plaintiffs who continue to live near Defendant's facility, the statute of limitations hasn't even started running, regardless of when their claims accrued.

## IV.  PLAINTIFF ARMSTRONG'S CLAIM IS NOT BARRED BY WORKERS' COMPENSATION EXCLUSIVITY.

Finally, Defendant argues that the claims of Plaintiff Alopecia Armstrong are barred by the Workers' Compensation Act. That act provides the exclusive remedy "for the disablement or death of [an] employee from an occupational disease in any way incurred by such employee in the course of or because of [her] employment." O.C.G.A. § 34-9-289. In order to be an "occupational disease" under the statute, however, the disease must not be "an ordinary disease of life to which the general public is exposed." *Id.* § 34-9-280(2)(D). Here, Ms. Armstrong seeks redress for breast cancer, dkt. 1 ¶ 91, which (sadly) is an ordinary disease of life; Defendant does not—nor could it—argue otherwise. *See Hull v. Merck & Co., Inc.*, 576 F. Supp. 616, 617 (N.D. Ga. 1984) (leukemia not an "occupational disease" under Georgia Workers' Compensation Act since it is undisputedly an ordinary disease of life); *Singleton v. Petland Mall of Georgia LLC*, No. 19-cv-01477, 2020 WL 3400194, at *5 (N.D. Ga. Mar. 18, 2020) (denying motion to dismiss because Defendant failed to show that Campylobacteriosis is not an ordinary disease of life).

Furthermore, the statutory definition of "occupational disease" excludes diseases "of a character to which the employee may have had substantial exposure outside of the employment." O.C.G.A. § 34-9-280(2)(C). Here, Ms. Armstrong alleges that her exposure to EtO was not exclusively from her employment, but that she also "inhaled contaminated air in and around her

home … and in the areas surrounding the facility." Dkt. 1 ¶ 90. Because she alleges facts "which could indicate that [her] illness could have resulted from an outside cause unrelated to her employment …, her disease is of a character to which she may have had substantial exposure outside of her employment with [Defendant]." *Singleton*, 2020 WL 3400194 at *6. Consequently, "Defendant[']s motion to dismiss on this issue is"—at best—"premature." *Id. See also Hall v. Synalloy Corp.*, 540 F. Supp. 263, 275 (S.D. Ga. 1982) (refusing to conclude as a matter of law that plaintiffs contracted disease while employed; "the issue remains a factual question more properly decided by the fact-finder upon a trial on the merits").

Simply put, there is nothing in the complaint suggesting that Ms. Armstrong is seeking redress for an "occupational disease" as defined by the Workers' Compensation Act, and she is thus free to proceed with her claims in this Court.

## CONCLUSION

Because Plaintiffs have Article III standing; because their complaint states claims for negligence, willful and wanton misconduct, private nuisance, and ultrahazardous activity; and because their claims are not barred by either the statute of limitations or the Workers' Compensation Act, Defendant's motion to dismiss should be denied.

Respectfully submitted,

**LORETTA BROWMAN, EVELYN ARMSTRONG, TIEESE SMITH, DEWAYNE WILLIAMS, VICTORIA SNOW, RONALD LAMPKIN, BARBARA BETTS, SHERRY HOLES, TERESSA TAYLOR, MICHAEL DUNN, ALOPECIA ARMSTRONG, PATRICIA BELL, BERNICE WILKINS, ANNIE WILLIAMS, CAROLYN WASHINGTON, SCHUYLER KNIGHT, CLARISSA COLEMAN, CHARLES JONES, MARK PUGH, SABRINA WATKINS, SUSAN DENICE KELLY, and ETHEL LENA EVANS,**

Dated: October 12, 2021                By: /s/ Benjamin H. Richman
                                        *One of Plaintiffs' Attorneys*

Benjamin H. Richman*
brichman@edelson.com
Michael Ovca*
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Charles Bailey
charlie.bailey@cookconnelly.com
Sutton Connelly
sutton.connelly@cookconnelly.com
COOK & CONNELLY, LLC
750 Piedmont Ave. NE
Atlanta, GA 30308
Tel: 678.539.0680

* admitted *pro hac vice*

*Counsel for Plaintiffs*

**<u>Certificate of Service</u>**

I hereby certify that on October 12, 2021, a copy of the foregoing ***Plaintiffs' Opposition to Defendant's Motion to Dismiss*** was filed with the Clerk of Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

<u>/s/ Benjamin H. Richman    </u>