**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

LORETTA BROWMAN, et al.

      Plaintiffs

v.

KENDALL PATIENT RECOVERY U.S.,
LLC

      Defendant

Civil Action File No.

1:21-cv-00112

Honorable Judge Randal Hall

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Kendall Patient Recovery U.S., LLC ("KPR") files its reply in support of its Motion to Dismiss Plaintiffs' Complaint.

### I.      Introduction

Plaintiffs allege nothing more than "we have medical diagnoses, and you have emissions," when they are required to plead specific facts to bridge the gap between KPR's alleged EtO emissions and Plaintiffs' alleged injuries. Thus, Plaintiffs were required to plead facts to support traceability, foreseeability, and proximate causation. However, when Plaintiffs' Complaint and the studies cited therein are reviewed as required under *Twombly/Iqbal*, Plaintiffs fail to plead facts to connect KPR's alleged emissions and Plaintiffs alleged injuries. The Complaint must be dismissed.

### II.      Argument

**A.      KPR is not responsible for exposures or injuries before it existed in 2017.**

Plaintiffs do not dispute the public records showing that KPR, the only defendant in this case, was formed in 2017. (*See* DE 10-1.) And the Complaint does not plausibly allege that KPR is liable for conduct or injuries predating its existence. (DE 10 at 2-3.) Plaintiffs note that "Georgia

recognizes successor liability in several situations, including where the successor 'is merely a continuation of the predecessor corporation.'" (DE 23 at 3 n. 1.) But Plaintiffs do not allege that KPR is "a continuation of a predecessor corporation," much less identify the "predecessor corporation" from which KPR's supposed liability would continue. When a complaint "fail[s] to allege any facts giving rise to the reasonable inference that [the defendant] is liable for the pre-acquisition torts committed by [a predecessor]," dismissal is appropriate. *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920 (11th Cir. 2012). Therefore, all of Plaintiffs' claims relating to exposures and injuries before KPR's formation on June 23, 2017, must be dismissed.[1]

## B.    Under Rule 12(b)(1), the Court lacks subject matter jurisdiction.

### 1.    Plaintiffs' alleged injuries are not fairly traceable to KPR.

Plaintiffs fail to allege facts showing that their alleged injuries can be fairly traced to any conduct of KPR. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (at the pleading stage, plaintiff must allege facts demonstrating each element of standing). In arguing otherwise, Plaintiffs ask the Court to apply an incorrect standard for analyzing traceability, claiming:

> In the context of harmful emissions, "a plaintiff need not prove that their injury can be traced to specific molecules of pollutions emitted by the alleged polluter.... It is enough that a plaintiff show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern."

(DE 23 at 6 (emphasis added) (quoting *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271 (11th Cir. 2015)).) But this is not the standard for pleading traceability in the context of harmful emissions. This is the standard for pleading traceability in the context of citizen suits under the Clean Water Act ("CWA"). *See, e.g.*, *Black Warrior*, 781 F.3d at 1280 (applying standard in the context of CWA claims).

---

[1] *See* Exhibit 1 for a list of Plaintiffs whose exposures and/or injuries were complete before June 23, 2017.

Indeed, all of the cases Plaintiffs rely on for this low standard for traceability involve citizen suits under the CWA or the Clean Air Act. (*See* DE 23 at 6-7 (citing *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 98 F. Supp.3d 1297, 1298 (S.D. Ga. 2015) ("To show traceability in a Clean Water Act case, a plaintiff need not prove that their injury can be traced to specific molecules of pollution emitted by the alleged polluter.") (emphasis added); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 557 (5th Cir. 1996) (discussing the test for establishing that an injury is "fairly traceable" to a defendant's discharge in a citizen suit under the CWA); *Mrosek v. City of Peachtree City*, No. 12-cv-0094, 2014 WL 11279463, at *4 (N.D. Ga. Dec. 22, 2014) (same); *New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734 F. Supp. 2d 1326, 1333 (N.D. Ga. 2010) (same); *Nw. Envtl. Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 967 (D. Or. 2006) (traceability for claims under the Clean Air Act).)

But Plaintiffs fail to cite a single case applying the CWA traceability standard in the context of personal injury claims. And at least one court in this circuit has expressly rejected the argument that CWA traceability applies to tort claims for personal injury. *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) (refusing to apply CWA standard for pleading traceability to claims for, *inter alia*, negligence, ultrahazardous activity, strict liability, and nuisance).

Nor is there any logical basis for applying CWA traceability standards to Plaintiffs' claims for bodily injuries. In enacting the CWA, Congress authorized any person with "an interest which is or may be adversely affected" to bring a civil suit to correct violations of the CWA. *See* 33 U.S.C. § 1365(g). Citizens act as private attorneys general to enforce environmental laws, even if their injuries are noneconomic and not compensable. *Middlesex Cnty. Sewarage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16-17 (1981). To allow plaintiffs to meet standing requirements to sue in federal court, Congress gave citizens the right to protect intangible "interests" in the

environment, and there is a very low bar for what constitutes an adverse effect on such "interests," *e.g.*, concerns about pollution deterring a plaintiff from fishing where he used to fish as a boy or deterring a plaintiff from picnicking and birdwatching. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 182 (2000). There is, accordingly, a low bar for alleging standing in the context of the CWA.[2] *See, e.g.*, *Mancuso v. Consol. Edison Co. of N.Y.*, 130 F. Supp. 2d 584, 590 (S.D.N.Y. 2001) ("Every appellate court that has considered standing under the CWA has adopted a low threshold of entry."), *aff'd* 25 F. App'x 12 (2d Cir. 2002).

Of course, here, Plaintiffs are not suing to protect intangible interests in the environment or to enforce federal law. They are suing to recover for alleged bodily injuries they claim were caused by KPR emitting EtO from a facility that KPR did not even own until 2017. Unlike a CWA plaintiff, Plaintiffs here are seeking compensation. Plaintiffs' claims are in no way analogous to CWA claims, and the traceability standard for CWA claims is simply inapplicable.

In any event, Plaintiffs have not alleged that they reside in a geographic area of concern or that KPR's EtO emissions contribute to the kinds of injuries alleged. First, Plaintiffs do not plead any facts to support an inference that they lived or worked "in the specific geographic area of concern" for injuries allegedly related to KPR's EtO emissions. Although Plaintiffs allege that at various times they lived and worked various distances from KPR's facility, they fail to allege any facts suggesting that exposures at those distances create an increased risk of adverse health conditions. To be clear, KPR does not contend that Plaintiffs must plead this with absolute certainty to establish standing. But Plaintiffs must provide at least some allegation suggesting that exposures can reach the geographic area alleged. But here, the complaint affirmatively pleads a

---

[2] Moreover, plaintiffs bringing citizen suits under the CWA must allege a violation of some environmental law, which Plaintiffs cannot do here. The CWA also guards against frivolous lawsuits by (i) requiring prospective plaintiffs to give notice of the alleged violation sixty days before filing their lawsuit to give the alleged violator the opportunity to come into compliance and (ii) authorizing the EPA to intervene as a matter of right. 33 U.S.C. § 1365 (a), (b), (c)(2).

far smaller zone of exposure. Specifically, the Complaint alleges two exposure zones with allegedly elevated cancer risks associated with EtO: (1) the specific census tract where the facility is located, based on the 2014 NATA's data (DE 1 ¶ 34), and (2) zones surrounding the facility, based on GA EPD's modeling of the maximum ground-level concentrations of EtO (DE 1 ¶ 44). But Plaintiffs fail to allege that they reside within these zones.

Second, Plaintiffs fail to plausibly allege that their injuries are traceable to EtO at all, and certainly not to alleged EtO emissions from KPR's facility. In arguing their incorrect CWA standard, Plaintiffs fail to recognize that, to establish traceability, the "'line of causation' between the alleged conduct and the injury must not be 'too attenuated.'" *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1088 (11th Cir. 2019) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Status Control Components, Inc.*, 572 U.S. 118 (2014)). A claim is too attenuated when the plaintiffs could have experienced the same injury due to the actions of third parties. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

Although Plaintiffs are correct that they do not have to show proximate cause to plead traceability, they do have to plead facts suggesting that KPR's conduct was a "factual cause" or a "but-for" cause of their injuries.[3] *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 505 (1975) (Article III requires plaintiffs "to establish that in fact, the asserted injury was the consequence of the defendants' actions") (emphasis added); *Fischer v. Governor of N.J.*, 842 F. App'x 741, 750 (3rd

---

[3] This is another reason that a CWA standing analysis does not apply to bodily injury claims. A CWA plaintiff is suing to correct violations that are adversely affecting his or her interests in the environment, regardless of whether the defendant is the sole contributor. *See* 33 U.S.C. § 1365. For this reason, under the CWA, it is only necessary to show that the defendant's pollution contributes to the effect on the plaintiff's interest. *See, e.g.*, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) ("Given the number of entities discharging chemicals into [the water], it would be virtually impossible for any of [the plaintiffs] to trace his injuries to [the defendant's] discharge in particular."). Accordingly, a CWA plaintiff can establish traceability without pleading that, "but for" the defendant's specific pollution, the plaintiff would return to fishing, picnicking, etc., in the affected waterway. *See Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 (4th Cir. 1992) ("[T]he 'but-for' standard…is inappropriately stringent for determining standing under the Clean Water Act.").

Cir. 2021) ("The causation element [of standing] requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury."). To show "cause-in-fact," the plaintiff ordinarily must show that, "but for" the defendant's conduct, the plaintiff would not have sustained the alleged injury. *Ware v. Jackson*, 848 S.E.2d 725, 731 (Ga. Ct. App. 2020).[4]

In its opening brief, KPR demonstrated that there are various sources of EtO and non-EtO risks in the general environment and specifically in the area surrounding the facility.[5] Plaintiffs' only response is a single, out-of-context quote from the 2020 Toxicology Profile: "You are not likely to be exposed to high levels of ethylene oxide in the general environment." (DE 23 at 7 (quoting DE 10-6, 2020 Toxicology Profile at 1).) Plaintiffs imply that the study concluded that the single greatest source of EtO exposures is industrial emissions, experienced by residents and workers in surrounding areas. (*Id.*) In truth, the quoted language compared ambient air exposures to occupational exposures, not all EtO sources to sterilization facilities. (DE 10-6 at 1.) Thus, Plaintiffs did not remotely address the numerous other environmental risk factors for their alleged injuries in either their Complaint or in their Opposition.

And Plaintiffs simply have not alleged facts supporting an inference that alleged emissions from KPR's facility caused them any exposure above background levels of EtO. To the contrary, the studies Plaintiffs rely on contradict their assertion of elevated exposure attributable to the facility. For example, the 2020 Toxicology Profile shows an average concentration of EtO nationwide within a range of $0.136 \, \mu\text{g/m}^3$ to $0.407 \, \mu\text{g/m}^3$. (Exhibit 2, Excerpt of 2020 Toxicology

---

[4] In contrast, "proximate cause" reflects a limit on legal liability based on a policy decision that the injury resulting from the defendant's conduct is too remote to be a basis for recovery. *Id.*

[5] The Court can take judicial notice of the Google maps that KPR attached to its motion. (*See* DE 10-7.) Fed. R. Evid. 201(b); *U.S. v. Ibarguen Palacios*, 815 F. App'x 481, 487 n. 9 (11th Cir. 2020); *United States v. Proch*, 637 F.3d 1262, 1266 n. 1 (11th Cir. 2001) (taking judicial notice of a map of Fort Walton Beach, Florida). Although the Court may take judicial notice on its own, Fed. R. Evid. 201(c)(1), to resolve any doubt, KPR requests that the Court take judicial notice of the Google map of Augusta, Georgia, *see id.* at (c)(2). *See U.S. v. Burroughs*, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016) (taking judicial notice of Google map whose accuracy could not reasonable be questioned).

Profile[6] at 111-12.) The GA EPD's 2019 modeling shows that the facility's contribution to EtO at the nearest residence was 0.00162 $\mu g/m^3$—less than 0.6%[7] of the variation in background exposures experienced by the general population. (DE 10-3 at 4.) Because the studies Plaintiffs rely on directly contradict their conclusory allegations, those allegations may not be accepted as true for the purpose of this motion. *See Bravo v. Loor-Tuarez*, 727 F. App'x 572, 576 (11th Cir. 2018).

In sum, Plaintiffs' argument that they need not show traceability to a scientific certainty is a straw man. As KPR argued in its opening brief, Plaintiffs must allege facts that, if true, would support an inference that alleged EtO emissions from KPR's facility materially increased Plaintiffs' EtO exposure and health risks above what they would have experienced anyway, as both a general matter and in their specific environment. The studies Plaintiffs rely on show the opposite. Thus, Plaintiffs failed to meet even the "low bar" to establish traceability—much less, causation—and their claims should be dismissed under Rule 12(b)(1).

### 2.    <u>Alopecia Armstrong has asserted only workers compensation claims</u>.

Ms. Armstrong claims there is a question of fact as to whether her alleged injury is covered by the Workers' Compensation Act ("WCA") because the WCA covers "occupational diseases," and Plaintiffs baldly assert that breast cancer is "an ordinary disease of life." (DE 23 at 23.)

Under the WCA, an "occupational disease":

[A]rise[s] out of and in the course of…employment in which the employee is exposed to such disease, provided the employee…first prove…all of the following:

(A) A direct causal connection between the conditions under which the work is performed and the disease;

---

[6] KPR attached excerpts of the 2020 Toxicology Profile to its motion (DE 10-6). The pages attached here were not included in that exhibit. The complete 2020 Toxicology Profile is available at https://www.atsdr.cdc.gov/toxprofiles/tp137.pdf (last accessed Nov. 16, 2021).

[7] 0.00162 $\mu g/m^3$ / (0.407 $\mu g/m^3$-0.136 $\mu g/m^3$) = 0.0059 or 0.59%.

(B) That the disease followed as a natural incident of exposure by reason of the employment;

(C) <u>That the disease is not of a character to which the employee may have had substantial exposure outside of the employment</u>;

(D) <u>That the disease is not an ordinary disease of life to which the general public is exposed</u>;

(E) That the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

O.C.G.A. § 34-9-280(2) (emphasis added).

Plaintiffs argue that the determination of whether a plaintiff has an occupational disease or an ordinary disease of life is "a factual question more properly decided by the fact-finder upon a trial on the merits." (DE 23 at 23-24 (quoting *Hall v. Synalloy Corp.*, 540 F. Supp. 263, 275 (S.D. Ga. 1982)).) But they fail to cite any Georgia cases to support this point. That is because this argument was flatly rejected by the Georgia Supreme Court in 1985.

In *Synalloy Corp. v. Newton*, 326 S.E.2d 470 (Ga. 1985), the Georgia Supreme Court held:

[A]s to occupational diseases the General Assembly has not converted the [WCA] into a complex of jury issues wherein every worker pursuing a tort action—and every employer resisting a workers' compensation claim—might dispute any portion of any of the five elements of the statutory description. To so interpret it would nullify the statute and its goal of producing stated benefits for job-related disability, independent of fault.

*Id.* at 472. As decided in *Newton*, there is no jury issue as to whether Ms. Armstrong's alleged illness[8] satisfies the five elements of an occupational disease. The State Board of Workers' Compensation is the sole tribunal for making this determination.

---

[8] Plaintiffs incorrectly frame the issue as whether "<u>breast cancer</u>" is an "ordinary disease of life." (*See* DE 23 at 23.) The correct question is whether a <u>disease flowing from alleged exposure to EtO</u> is an ordinary disease of life. *See Newton*, 326 S.E.2d at 472 (framing the issue as whether "a disease stemming from exposure to [a toxic substance] [was] an ordinary disease of life"). The Complaint is replete with allegations that diseases caused by EtO exposure are occupational. (*See, e.g.*, DE 1 at ¶ 18 ("[O]ccupational exposure to [EtO] may increase the frequency of genetic mutations in humans."), ¶ 19 ("EtO [should] be regarded in the workplace as a potential occupational carcinogen.").)

Plaintiffs try to escape this conclusion by contending that Ms. Armstrong may have had exposures to EtO outside of work, quoting the conclusory allegation that Armstrong "inhaled contaminated air in and around her home…and in the areas surrounding the facility." (DE 23 at 23-24; *see* DE 1 at ¶ 90.) But this rote allegation is repeated for all 22 Plaintiffs. (DE 1 at ¶¶ 49, 53, 57, 61, 65, 69, 73, 77, 82, 86, 94, 99, 103, 107, 111, 115, 119, 123, 127, 131, 135.) Ms. Armstrong does not allege any <u>fact</u> suggesting she was near the facility other than during her employment. Thus, her conclusory allegations of exposure outside of her employment are "'naked assertion[s]' devoid of 'further factual enhancement,'" which the Court does not accept as true on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The WCA is the exclusive remedy for the injuries Ms. Armstrong alleges. O.C.G.A. § 34-9-289. Therefore, her claims must be dismissed.

**C.** **Plaintiffs' claims are barred by the statute of limitations.**

**1.** **Plaintiffs' claims for damages based on private nuisance are time-barred.**

Plaintiffs argue that their private nuisance claims are not time-barred because the alleged nuisance is "continuing," not "permanent." (DE 23 at 20.)[9] While it is true that each occurrence of a "continuing nuisance" is "a fresh nuisance for which a fresh action will lie," this does not mean that a plaintiff can recover for bodily injuries outside the two-year statute of limitations. *See Hoffman v. Atlanta Gas Light Co.*, 426 S.E.2d 387, 390 (Ga. Ct. App. 1992). A nuisance claim may only be maintained for damages inflicted within the limitation period for the alleged injury. *Id.* In *Hoffman*, the injury was property damage; thus, the plaintiffs could maintain an action for damages inflicted within four years before the suit. *Id.*; *see also City of Gainesville v. Waters*, 574 S.E.2d 638, 643 (Ga. Ct. App. 2002) (for a continuing nuisance, the statute of limitation "does not

---

[9] Plaintiffs assert that KPR "does not—nor could it—argue that Plaintiffs' private nuisance claims are time-barred." (DE 23 at 20.) To the contrary, KPR made this argument in its opening brief. (DE 10 at 11.)

preclude recovery for any damages save those which were suffered more than 4 years prior to the filing of the suit"). Here, Plaintiffs allege bodily injuries, meaning Plaintiffs could only possibly recover for injuries that occurred within two years of serving KPR with the Complaint.

Nor does the "discovery rule" toll the limitations period for nuisance claims. The relevant question for application of the discovery rule is: "When did the cause of action accrue?" *See Miles v. Ashland Chem. Co.*, 410 S.E.2d 290 (Ga. 1991) (discovery rule does not toll limitations period running from a specific date). For a continuing nuisance, the action accrues at the time of continuance, not when Plaintiffs claim to discover that their injuries are caused by the alleged nuisance. *See Tucker v. S. Wood Piedmont Co.*, 28 F.3d 1089, 1090 (11th Cir. 1994). Thus, even if Plaintiffs could demonstrate a continuance of the alleged nuisance for which a fresh action would lie, they cannot recover for injuries incurred more than two years before they served KPR. Therefore, Plaintiffs' nuisance claims for such injuries are time-barred.

**2.      Plaintiffs cannot invoke the discovery rule to extend the limitation period.**

Plaintiffs argue that "dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." (DE 23 at 20 (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004)).) As a general proposition, that is true. And here, it is apparent from the face of the Complaint that numerous claims are time-barred because the injuries occurred more than two years before Plaintiffs filed suit.

Plaintiffs argue that, under Georgia law, their causes of action did not accrue until they "discovered," or through the exercise of reasonable diligence could have discovered, that KPR's alleged emissions caused their alleged injuries. (DE 23 at 21.) However, federal law controls whether the allegations supporting the claim's accrual date are sufficient for purposes of a motion to dismiss. *Barrett v. United Ins. Co. of Am., Inc.*, 418 F. Supp. 3d 1274, 1284 n. 5 (S.D. Ga. 2019).

Under federal law, when, as here, the dates alleged in the complaint make it clear that the statute of limitations bars the claim, the plaintiff must allege facts supporting tolling to avoid dismissal. *Patel v. Diplomat 1419VA Hotels, LLC*, 605 F. App'x 965, 966 (11th Cir. 2015); *see also Fish v. Geico Ins.*, 606 F. App'x 576 (11th Cir. 2015) (plaintiff must plead facts showing that equitable tolling was warranted, when claims are apparently time-barred on the face of the complaint); *Jacobs v. Estefan*, 531 F. App'x 1004, 1005-1006 (11th Cir. 2013) (dismissal was appropriate when claims were apparently time-barred and plaintiff did not allege any facts that would have tolled statute of limitations). Here, each of the Plaintiffs attempts to invoke the discovery rule with a threadbare allegation that he or she "did not have notice" that the alleged injury "was wrongfully caused or that it was caused by the Defendant's emissions of ethylene oxide." (DE 23 at 22 (citing allegations in Complaint).) However, a bare allegation that a plaintiff "could not have reasonably learned" of the facts on which his claim was based, "without more, is insufficient to satisfy the pleading requirements as to tolling." *Patel*, 605 F. App'x at 966.

Plaintiffs' reliance on *Dollar v. Monsanto Co.* is misplaced. (DE 23 at 22 (citing *Dollar*, No. 20-cv-78, 2021 WL 2300788 (S.D. Ga. Jun. 4, 2021)).) In *Dollar*, the plaintiff alleged that "despite the exercise of diligence, neither she nor [the decedent] could have learned of [a] causal connection" between their injuries and the alleged carcinogen, because of the defendant's "false and fraudulent scheme and active concealment of the safety of its product." *Id.* at *1. There were further allegations of "numerous misrepresentations, including specifically that [the product] was safe enough to drink" and that the defendant supplied false data on the product. *Id.* Here, there are no allegations that Plaintiffs exercised diligence to discover the alleged cause of their injuries or that Plaintiffs could not have learned of a causal connection due to KPR's misrepresentations. Indeed, there are no allegations whatsoever about why Plaintiffs may not—or could not—have

discovered the alleged cause of their injuries. Also, unlike *Dollar*, there are no allegations about when the Plaintiffs actually did discover the alleged cause of their injuries.

Plaintiffs also rely on a "continuing tort" theory to suggest that "for the Plaintiffs who continue to live near Defendant's facility, the statute of limitations hasn't even started running, regardless of when their claims accrued." (DE 23 at 23.) But the continuing tort theory does not extend the time for a plaintiff to recover damages for known injuries. Instead, "the plaintiff in a continuing tort suit can recover for any damages that were suffered within the applicable statute of limitations period." *Yancey v. Clark Atlanta Univ.*, 431 F. App'x 816, 818 (11th Cir. 2011) (per curiam) (internal punctuation omitted) (quoting *Tri-County Inv. Grp., Ltd. v. S. States, Inc.*, 500 S.E.2d 22, 25 (Ga. Ct. App. 1998)). The discovery rule may apply in the context of a continuing tort to extend the limitation period until the plaintiff discovered, or through reasonable diligence should have discovered, the cause of the injury. But once that injury is discovered, the cause of action accrues, and the statute of limitations begins to run. As discussed above, however, Plaintiffs have failed to allege facts suggesting that the discovery rule applies to their claims. Based on the allegations in the Complaint, Plaintiffs' claims are barred by a two-year statute of limitations and must be dismissed.

**D.**   **Plaintiffs fail to plausibly plead essential elements of their claims, and they have thus failed to state a claim.**

Plaintiffs argue that Rule 12(b)(6) "simply" requires them to provide a "short and plain statement of the claim," "sufficient to give fair notice to [Defendant]." (DE 23 at 9 (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260-61 (11th Cir. 2015)).) Notably absent from their argument is the U.S. Supreme Court's "plausibility" pleading standard. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678. Under *Twombly* and *Iqbal*, a plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).

Plaintiffs rely on *Palm Beach* to suggest that a lesser standard applies under Rule 8 of the Federal Rules of Civil Procedure. But *Palm Beach* was discussing whether Florida's heightened pleading standards applied to state law claims brought in federal court, and the court concluded that, under the *Erie* doctrine, Rule 8 applied. 781 F.3d at 1259-60. The Eleventh Circuit clearly was not departing from the "plausibility" requirement to survive a 12(b)(6) motion. Under *Twombly* and *Iqbal*, "fair notice" is not enough.

**1.   <u>Plaintiffs fail to state a claim for negligence.</u>**

**a.   <u>KPR does not owe a duty to Plaintiffs.</u>**

Plaintiffs' negligence claim was originally premised on "a duty to exercise reasonable care in the operation of its facility, including the emission of EtO." (DE 1 at ¶ 139.) The Complaint listed six ways the alleged duty was breached, none of which were supported by the allegations. Plaintiffs attempt to cure the deficiencies in their Complaint by identifying a new duty in their response brief: a duty of reasonable care in the use and disposal of chemicals. (DE 23 at 10.) However, Plaintiffs cannot amend the Complaint by argument in their response brief. *See Bradley v. Jackson*, No. 5:13-cv-127, 2015 WL 9914193, at *2 (S.D. Ga. Nov. 16, 2015), adopted by 2016 WL 309851 (S.D. Ga. Jan. 1, 2016).  Therefore, for the reasons outlined in the Motion to Dismiss, Plaintiffs' negligence claim must be dismissed.

If the Court is inclined to consider Plaintiffs' newly-identified duty, it similarly fails for at least three reasons: (1) there is no general legal duty "to all the world not to subject [others] to an unreasonable risk of harm," *Dep't of Labor v. McConnell*, 828 S.E.2d 352, 358 n.4 (Ga. 2019); (2)

the duty alleged by Plaintiffs is not recognized under Georgia law; and (3) there is no Georgia authority showing a comparable duty that can be extended by analogy.

Georgia and federal courts rely on *McConnell* to find that "plaintiffs who failed to show a specific, recognized legal duty under Georgia law as opposed to some generalized duty could not maintain a claim for negligence." *Johnson v. 3M*, __ F.Supp.3d __, 2021 WL 4745421, at *45 (N.D. Ga. Sept. 20, 2021) (citing *McConnell*, 828 S.E.2d at 358)). Relying on the Restatement, Plaintiffs argue that, "[a]s a general matter, '[t]he possessor of land has a duty of reasonable care for…conduct on the land that poses a risk of physical harm to persons…not on the land.'" (DE 23 at 10 (citations omitted).) But this is exactly the type of duty that Georgia rejected in *McConnell*: there is no "general legal duty to all the world not to subject others to an unreasonable risk of harm." 828 S.E.2d at 816 (internal quotation marks and punctuation omitted) (expressly disapproving *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982), to the extent *Bradley* created a general legal duty to all the world); *see also Murray v. ILG Technologies, LLC*, 798 F. App'x 486, 491 (11th Cir. 2020) ( "duty-to-the-world language [is] not a correct statement of the law" and "no such duty exists under Georgia law").

Plaintiffs next point to appellate court decisions discussing duties owed to adjacent landowners. *See e.g., Black v. City of Cordele*, 293 S.E.2d 557, 559-60 (Ga. Ct. App. 1982) (explosion causing deaths on adjoining property); *Howell Gas of Athens, Inc. v. Coile*, 146 S.E.2d 145 (Ga. Ct. App. 1965) (explosion causing damage on adjoining property).  In these cases, product defects or malfunctions resulted in injury on adjacent land and/or to adjoining owners. Here, there are no product defect or malfunction allegations—in fact, there are no allegations that Defendant violated any permits or regulations. Nor do Plaintiffs occupy land adjacent to KPR's. Rather,

Plaintiffs allegedly lived or worked some distance from KPR's facility, or merely within the same city or county limits. The cases Plaintiffs rely on are inapposite.

Plaintiffs then leap to a district court case to suggest that, in general, "one using dangerous chemicals on their property—like Defendant here—has 'a duty to exercise reasonable care in their use and disposal of' the chemicals so as to avoid injury to those nearby." (DE 23 at 10 (citing *Johnson*, No. 20-cv-8, at 109-10).) However, Plaintiffs' analysis of *Johnson* depends on cherry-picked language devoid of necessary context. For example, Plaintiffs omit how the court in *Johnson* arrived at this duty:

> In line with [appellate court precedent regarding a duty not to pollute state waters] (and in some degree the statutory provisions of the Georgia Water Quality Control Act), the Court finds that [Defendants] have a duty to exercise reasonable care in their use and disposal of unreasonably dangerous chemicals…in operating their various carpet manufacturing facilities to avoid pollution of the State's waterways and injury to members of the downstream public who consume water as part of their public drinking water supply.

*Johnson*, No. 20-cv-8, at *48. Thus, *Johnson* involved a very specific duty rooted in legal authority dealing with pollution of state waters, and the plaintiff's personal injury claims were accompanied by allegations of statutory violations and citizen suit claims under the CWA. *Johnson* did not, as the Plaintiffs imply, recognize a general duty "to exercise reasonable care in [the] use and disposal of chemicals to avoid injury to those nearby."[10] (DE 23 at 10.) Here, unlike *Johnson*, there is no alleged violation of any statute, regulation, or permit. Because Plaintiffs have not identified a cognizable duty owed by KPR to Plaintiffs, their negligence claims must be dismissed.

---

[10] To whatever extent the Northern District of Georgia attempted in *Johnson* to recognize a new legal duty under Georgia state law, it was not authorized to do so. And this Court must follow the decisions of Georgia state courts regarding duties recognized under Georgia law. *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) ("In determining the law of the state, federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts.").

**b.   <u>Any alleged harm was not foreseeable based on contemporary information</u>.**

Plaintiffs concede that there is no duty to protect against unforeseeable harms. (DE 23 at 11.) And they do not respond to KPR's detailed arguments showing that they failed to plead any facts suggesting the facility presented a foreseeable risk of unreasonable harm to Plaintiffs. Instead, Plaintiffs merely reiterate their allegations, which KPR previously addressed. (DE 10 at 14-19.)

At most, Plaintiffs conflate generic knowledge of a material's potential carcinogenicity with foreseeability of unreasonable harm under specific circumstances. But "one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible." *Amos v. City of Butler* 529 S.E.2d 420, 422 (Ga. Ct. App. 2000). Plaintiffs apparently contend they can just plead a generic potential risk instead of facts which, if true, would show a "foreseeable <u>unreasonable</u> risk of harm." *Watson v. Gen. Mech. Servs*., 623 S.E.2d 679, 681 (Ga. Ct. App. 2005) (emphasis added). Plaintiffs' position is contradicted by Georgia law. *Id.*

Further, the Complaint fails to even allege what level of risk is "unreasonable." *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL Nos. 2924, 20-MD-2924, 2021 WL 2682659, at *12 (S.D. Fla. June 30, 2021) ("[I]f the Plaintiffs equate a .001% increased risk with a significantly increased risk, then the Plaintiffs should clearly make that argument. The Court is unable, however, to find any allegation…from which the Court could infer that a single dose of NDMA…is equated to a substantial increase in the risk of cancer. Instead, the scientific studies that the Plaintiffs rely upon study lifetime diet habits and then conclude, based upon a lifetime of eating or not eating NDMA-rich foods, the relative risk of a consumer's cancer."). To the extent the Complaint generically alleges that any risk is unreasonable (*see, e.g.,* DE 1 at ¶¶ 34, 36 (alleging that the 64 in a million Cancer risk estimated in the 2014 NATA is "shockingly high")), such allegations contradict the studies Plaintiffs incorporate and rely on, and thus cannot be taken as true at this pleading stage. (*See* DE 1 at ¶¶ 33-38 (citing DE 10-4, 2014 NATA Fact Sheet at 2

(using a 100 in a million threshold for acceptable risk)).) Because KPR had no duty to protect against unforeseeable risks, Plaintiffs' negligence claims fail.

### c.  **Plaintiffs fail to plausibly allege KPR proximately caused their alleged injuries.**

Plaintiffs allege that, (1) at some point in time, they were injured and, (2) at some points in time, they lived within various distances of the facility. This is not a plausible allegation that KPR proximately caused Plaintiffs' damages. Plaintiffs' only response is that they should be allowed to proceed to discovery before alleging sufficient facts to causally connect the facility with their injuries. Plaintiffs are incorrect. Even at the pleading stage, a plaintiff must allege facts which, if true, would support ruling out other causes of the injury. *Resnick v. Avmed, Inc*., 693 F.3d 1317, 1326 (11th Cir. 2012) (courts consider the well-pleaded factual allegations relating to causation to determine whether they "plausibly suggest an entitlement to relief").

Plaintiffs cite *Adinolfe v. United Techs. Corp*., 768 F.3d 1161, 1175 (11th Cir. 2014), for the notion that, as to causation, they only needed to plead that "defendant released contaminants on its property, that the contaminants reached residential areas where plaintiffs lived, and that plaintiffs and others in the area had cancer." (DE 23 at 13.) However, as discussed above,[11] Plaintiffs have not alleged any facts showing they were exposed to any significant emissions. Plaintiffs make only conclusory allegations of exposure, but such allegations are not taken as true at this stage. *See Iqbal*, 556 U.S. at 678 ("naked" assertions, devoid of factual enhancement, do not meet the plausibility requirement to survive a 12(b)(6) motion). Moreover, these conclusory allegations are inconsistent with the studies Plaintiffs rely on regarding the zone of exposure and concentration levels for the facility's emissions. (*See* DE 10-3 at 3-4.)

---

[11] *See* Section II.B.1, *supra*, at 4-5; *see also* KPR's Motion, DE 10 at 4-6.

Further, the allegations in *Adinolfe* were not as generic as Plaintiffs suggest. *See* 768 F.3d at 1169-1171 (describing detailed allegations in the complaint). In *Adinolfe*, the plaintiffs alleged—and submitted expert affidavits and scientific testing—that the defendant released contaminants onto its property and the adjacent property; the contaminants migrated to residential areas through a specific aquifer; the contaminants were in the residential groundwater; and the residential area was designated as a cancer cluster. *Id.* at 1165-66, 1175.

The Complaint here falls far short of the pleadings in *Adinolfe*. While Plaintiffs here plead that the cancer risk is elevated in the census tract in which KPR's facility sits, and in a zone of exposure in the 2019 GA EPD modeling, Plaintiffs fail to allege that they reside in those areas. Nor do Plaintiffs allege facts suggesting that the facility's EtO emissions contributed to any increased exposure above normal levels from other natural, commercial, and industrial sources. (*See* Section II.B.1, *supra*, at 6-7.) Thus, Plaintiffs fail to plead any causal connection between their injuries and the facility's emissions. The presence of EtO in ambient air from numerous sources and the increased cancer risks associated with formaldehyde, as stated in the reports Plaintiffs rely on,[12] crucially distinguish this case from those Plaintiffs cite, where the only plausible exposures were from the defendants. *See, e.g.*, *Adinolfe*, 768 F.3d at 1175 (there were no "obvious alternative explanations" for the contamination).

### d.   **Plaintiffs' alleged injuries were not a probable consequence of the alleged conduct.**

Plaintiffs were required to plead "a consequence which is probable, according to ordinary and usual experience" and not "merely possible." *Dowdell v. Wilhelm*, 699 S.E.2d 30, 32 (Ga. Ct. App. 2010). At most, Plaintiffs have alleged that a lifetime of continuous exposures can create a 5- to 20-in-a-million cancer risk in certain geographic areas. (*See* DE 1 at ¶ 34 (alleging a 64-in-

---

[12] *See* KPR's Motion, DE 10 at 7-8.

a-million cancer risk for all air toxics combined, of which only 20 in a million was estimated for all EtO sources in the census tract combined), ¶ 46 (relying on GA EPD's 2019 modeling, which estimated a 5-in-a-million risk at the closest known residence to the facility).) But Plaintiffs do not allege that they experienced a lifetime of continuous exposures in the relevant geographic areas.

Whatever the likelihood needed to cross the line from mere possibility to plausibility, less than a few in a million is insufficient as a matter of law. *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 540–41 (Ga. Ct. App. 2011) (upholding dismissal where the defendant contributed to one percent or less of the asbestos to which plaintiff was exposed and the alleged exposure was for days, not the weeks required to exceed relevant exposure thresholds). Notably, Plaintiffs have not even made a bare allegation that the population cancer rates are any higher in the zone of alleged exposure than would otherwise be expected. Such an allegation would not, by itself, show that any increased risk of cancer was directly attributable to the facility. However, Plaintiffs certainly cannot allege a causal connection between the facility and their cancer if they do not even allege a higher cancer rate than normal near their residences or workplaces. *Compare Adinolfe*, 768 F.3d at 1170 (relevant geographic area had been designated as a "cancer cluster").

e. **Plaintiffs' alleged exposures are not associated with any increased risks**.

Finally, the Complaint fails to plead proximate cause because it does not connect the alleged exposures with the risk thresholds for EtO pled in the Complaint. (*See* DE 10 at 21.) Plaintiffs do not allege that they experienced high enough concentrations to be subject to short term occupational risk estimates or that they experienced a lifetime of continuous exposure that could equate to the lower risk thresholds cited in the Complaint. (*Id.*) Plaintiffs fail to plead what level of exposure is causally related with their alleged harm. This constitutes a failure to plausibly plead proximate cause. *See In Re: Zantac (Ranitidine) Products Liab. Litig.*, MDL NO. 2924, 20-

MD-2924, 2021 WL 2682659, at *11-16 (S.D. Fla. June 30, 2021) (granting motion to dismiss because plaintiffs failed to allege (1) they were exposed to carcinogen every day for 70 years, as required to increase cancer risk, and (2) their level of exposure was associated with "significantly increased risk"); *see also Riva v. Pepsico, Inc*., 82 F. Supp. 3d 1045, 1058 (N.D. Cal. 2015) (dismissal where plaintiffs alleged how much exposure to a carcinogen would cause cancer in animals, but failed to plead how much exposure caused cancer in humans and how much exposure the plaintiffs had received.).

Thus, Plaintiffs failed to plead proximate cause, and their claims must be dismissed.

### 2.  **Plaintiffs fails to plead a viable claim for willful and wanton conduct.**

Willful and wanton misconduct is not synonymous with negligence. "There is an element of intent, actual or imputed…, which removes such conduct from the range of conduct which may be termed negligent." *Truelove v. Wilson*, 285 S.E.2d 556, 559 (Ga. Ct. App. 1981). Plaintiffs concede that the only allegation in support of their willful and wanton misconduct claim is that "Defendant discharged vast amounts of EtO in an area where Plaintiffs lived and worked, despite wide-spread knowledge at the time that EtO was dangerous." (DE 23 at 16.) Plaintiffs argue that this raises a "*plausible inference* that Defendant acted with conscious or reckless indifference to the consequences of its actions." *Id.* (emphasis added). Under Georgia law, this is not enough. Courts have required the alleged misconduct to be "reckless in the degree that…[is] equivalent in spirit to actual intent." *Arrington v. Trammell*, 62 S.E.2d 451, 455 (Ga. Ct. App. 1950). Plaintiffs do not allege any conduct approaching actual intent.

Further, "[i]n order that the actor's conduct may be in reckless disregard of the bodily security of others, it must not only involve a high degree of probability that death or serious bodily harm will result therefrom, but the circumstances must be such that the risk so created is…not

justified by the end to be attainted." *Id.* (internal citations omitted); *see also Horn v. C. L. Osborn Contracting Co.*, 423 F. Supp. 801, 810 (M.D. Ga. 1976) ("[T]he evidence must show that he <u>knew</u> his conduct would inflict injury or that on account of the attendant circumstances which were known to him or with knowledge of which he was chargeable, the <u>inevitable or probable consequence</u> of his conduct would be to inflict injury and with reckless indifference to the consequences of such conduct he committed the act or omitted to do his duty to avoid the threatened injury.") (emphasis added), *judgment rev'd on other grounds*, 591 F.2d 318 (5th Cir. 1979)). Here, there is no allegation that KPR <u>knew</u> that the use of EtO at the facility would allegedly result in harm to the Plaintiffs. Nor have Plaintiffs demonstrated that there was a high probability or that it was the <u>inevitable or probable</u> consequence that EtO emissions from the facility would inflict injury on the Plaintiffs. In addition, EtO emissions from the facility were conducted under a permit, thus undercutting any allegation that the risk was "not justified." Therefore, the Complaint does not state a claim for willful and wanton misconduct.

    **3.**   <u>**Plaintiffs fail to state a claim for nuisance.**</u>

As demonstrated in KPR's motion, "[t]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance." *See City of Douglasville v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999). Plaintiffs concede this point, but they argue that "an act may be lawful up until the point it creates a condition causing hurt, inconvenience, or damage to another." (DE 23 at 18.) Essentially, Plaintiffs contend that any conduct anywhere can become a nuisance to Plaintiffs if they do not like it.

But, as the Georgia Court of Appeals recently reiterated, "the hallmark of a nuisance claim is some invasion of the plaintiff's interest in land." *Blondell v. Courtney Station 300 LLC*, __ S.E.2d __, 2021 WL 5071480, at *9 (Ga. Ct. App. Nov. 2, 2021). "Although nuisance is broadly

defined in [Georgia] Code as 'anything that causes hurt, inconvenience, or damage to another,' OCGA § 41-1-1, that 'hurt' or 'damage' must 'arise[ ] from acts which affect the land itself." *Id.* "A plaintiff in a nuisance action may recover for property damage or personal injuries, but not without first establishing 'a real and appreciable interference with the plaintiff's use and enjoyment of his land.'" *Id.* (citation omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 821F (1979)).

Although Plaintiffs allege, in conclusory fashion, that the facility's EtO emissions "interfere with Plaintiffs' enjoyment of property," Plaintiffs' nuisance claims are not premised on any factual allegation of injury to their real property. (DE 1 at ¶ 154.) Instead, Plaintiffs attempt to support their nuisance claim with the allegation that KPR's emissions interfere with their "right to breathe clean air without dangerous levels of carcinogens." (*Id.* at ¶¶ 154, 155.) First, Georgia law does not recognize any right to breathe air that is free from carcinogens.

> Theoretically, every person has the natural right to have the air diffused over his premises in its natural state, free from all artificial impurities. If this rule were literally applied, its application would seriously disturb business, commerce, and society itself. Hence, by air in its natural state and free from artificial impurities is meant pure air consistent *with the locality and nature of the community.*

*Poultryland, Inc. v. Anderson*, 37 S.E.2d 785, 790 (Ga. 1946) (internal punctuation omitted).

Second, Georgia law does not allow a recovery for alleged damage to air that is undetectable by human senses. *Cf. Superior Farm Mgmt, LLC v. Montgomery*, 513 S.E.2d 215, 218 (Ga. 1999) (a thing that is lawful in one locality may be a nuisance in another "if it produces that which is offensive to the senses"). Generally, a physical invasion is required for a plaintiff to recover, but "noise, odors and smoke which impair the landowners' enjoyment of his property are also actionable nuisances, if, and only if, a partial condemnation of the property results." *Jordan v. Ga. Power Co.*, 466 S.E.2d 601, 606 (Ga. Ct. App. 1995) (citing *Dept. of Transp. v. Bonnett*, 358 S.E.2d 245 (Ga. 1987)) (holding that, whatever the invasive quality of electric, non-tangible

magnetic fields, they cannot form the basis of a nuisance claim). Here, there is no allegation of a physical invasion or partial condemnation, and Plaintiffs' nuisance claim fails.[13]

Plaintiffs also argue that KPR's emissions can constitute a nuisance even if KPR never violated its EPD permit. Plaintiffs rely on *Galaxy Carpet Mills, Inc. v. Massengill*, 338 S.E.2d 428 (Ga. 1986), for this proposition, but *Galaxy* is distinguishable.[14] The permitted activity in *Galaxy* was operation of boilers, and the permits authorized permissible emission rates and opacity of visible emissions. *Id.* at 429. The nuisance complained of included loud, offensive noises and particulate matter deposited on the plaintiffs' property, activities that were not authorized by permit. *Id.* Here, the only alleged nuisance is lawful activity for which KPR has a permit.

Moreover, to the extent *Galaxy* suggests that lawful activity can be a nuisance, it is only "by reason of its location in a residential area." *Id.* Again, this is because plaintiffs must allege some physical invasion of their property to state a claim for private nuisance. *Cox v. DeJarnette*, 123 S.E.2d 16, 24 (Ga. Ct. App. 1961) ("[T]he definition of an actionable private nuisance [is restricted] to one which is 'specially injurious to an individual by reason of its proximity to his home.'"). In *Galaxy*, the offending business was in a residential area. 338 S.E.2d at 429. In contrast,

---

[13] Plaintiffs rely on cases involving physical invasion to the plaintiff's real property, but this reliance is misplaced because Plaintiffs allege only damage to air around the facility. *See Vulcan Materials Co. v. Griffith*, 114 S.E.2d 29 (Ga. 1960) (blasting cracked the walls of the plaintiff's house and caused dust, smells, and fumes); *Sumitomo Corp. of Am. v. Deal*, 569 S.E.2d 608 (Ga. Ct. App. 2002) (detention pond increased water flow on the plaintiff's property, causing hurt and inconvenience); *Johnson*, *supra*, 2021 WL 4745421 (claim for public nuisance based on contamination of drinking water and wastewater flowing onto the plaintiff's property).

[14] Plaintiffs also rely on *Superior Farm LLC*, *supra*, for this proposition, but *Superior Farm* involved construction of a pig farm, not activity for which the defendant had a permit. *Id.* at 217-18. The court stated that generally applicable environmental laws do not negate the possibility that activity could be a nuisance. *Id.* at 218.

KPR's facility is in an area zoned for "Heavy Industry." (Exhibit 3,[15] Augusta Zoning Maps; Exhibit 4, Excerpt of Comprehensive Zoning Ordinance of Augusta, Georgia[16] at 25-1.)

*Galaxy* does not suggest that a lawful business, operating in an industrial area, can become a nuisance when it allegedly contaminates the air in the industrial area in an undetectable way, and that air then circulates in a residential area, miles away from the business. Indeed, Georgia courts suggest otherwise. *See, e.g.*, *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros., Inc.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004) (chip mill was not a nuisance when operated lawfully in a location specifically negotiated and zoned for a chip mill); *see also Poultryland*, 37 S.E.2d at 790 ("[T]here must be some proper place where every lawful business may be carried on, without danger of interference on the part of those who, in some slight degree, may be annoyed or endangered by the nearness of the objectionable occupation.").

All that Plaintiffs have alleged is that KPR is lawfully emitting EtO that Plaintiffs cannot detect in the air on their property. Thus, they have failed to state a claim for nuisance.

**4.   Plaintiffs fail to plead a viable claim for ultrahazardous strict liability.**

Plaintiffs do not identify a statute establishing strict liability, which is necessary for their claim. *See e.g., Stiltjes v. Ridco Exterm. Co.*, 343 S.E.2d 715, 717 (Ga. Ct. App. 1986) ("Because there is no common law cause of action in Georgia for strict liability, a party seeking recovery under that theory must proceed under a statute granting such a right.") (citations omitted), *aff'd*,

---

[15] The attached zoning maps were printed from Augusta, Georgia's Geographic Information System ("GIS") website. The searchable map is available at https://gismap.augustaga.gov/augustajs/ (last visited Nov. 8, 2021). Zoning information can be color coded under the "Map Themes" toolbar by clicking on "Zoning." Heavy Industrial or "HI" zones are color coded as purple on the map. Addresses can be searched under the "Quick Search" toolbar. The facility is located at 1430 Marvin Griffin Rd (DE 1 ¶ 5) and is outlined in red in the attached zoning maps.

[16] The Zoning Ordinance shows that the abbreviation "HI" indicates that the area is zoned for "Heavy Industrial" use. A complete copy of the Comprehensive Zoning Ordinance of Augusta, Georgia is available at https://www.augustaga.gov/DocumentCenter/View/8388/Comprehensive-Zoning-Ordinance---November-2019?bidId= (last visited Nov. 8, 2021).

347 S.E.2d 568 (Ga. 1986). Plaintiffs do not respond to this argument, which KPR raised in its opening brief, or identify a statutory basis for strict liability against KPR. (DE 23 at 18-19.) For this reason alone, the claim should be dismissed. *See Kurt v. Sterigenics U.S., LLC et al.*, No. 20-A-3432-6, at *4-5 (Ga. St. Ct. July 15, 2021) (dismissing ultrahazardous strict liability claim because plaintiffs did not allege statutory violation to support cause of action).

Plaintiffs argue that, because the Supreme Court of Georgia has not squarely addressed whether emission of EtO is an ultrahazardous activity, this must be determined by a jury. (DE 23 at 20.) That argument is directly contradicted by the many Georgia courts[17] that have disposed of such claims without jury consideration. *Lowry v. Cochran*, 699 S.E.2d 325, 329-30 (Ga. Ct. App. 2010), overruled on other grounds by *McConnell*, 828 S.E.2d at 352 (skydiving was not an inherently dangerous activity and defendant was entitled to summary judgment); *Luther v. Wayne Frier Home Ctr. of Tifton, Inc*., 592 S.E.2d 470 (Ga. Ct. App. 2003) (affirming summary judgment for defendant because "there is no Georgia authority…that welding is such an inherently dangerous activity"); *Stiltjes*, 343 S.E.2d at 717-18 (summary judgment was appropriate on strict liability claim because it was not authorized by Georgia statute); *see Kurt*, *supra*, at *4-5.

It is fatal to Plaintiffs' claims that they have not alleged a statutory violation imposing strict liability. Further, this issue is not a jury question because emission of EtO within government limits is not, as a matter of law, an abnormally dangerous activity. This claim should be dismissed.

---

[17] Plaintiffs reference a West Virginia case, *Letart v. Union Carbide Corp.*, 461 F. Supp. 3d 391, 399 (S.D.W. Va. 2020), to support their argument that they plausibly alleged strict liability. In *Letart*, the court determined that it was "plausible" that "Defendant's manufacturing of EtO [was] abnormally dangerous" based on state law and the Restatement (Second) of Torts. 461 F. Supp. 3d at 399. Notably, the court ultimately dismissed the plaintiffs claim for strict liability for abnormally dangerous activity for failure to plead an injury. *Id.* at 395-96. In addition, West Virginia's strict liability claims are based on common law, not statute, making this jurisdiction's opinions on strict liability inapposite. *See Penesci v. Nat'l Steel Corp.*, 295 S.E.2d 1, 10-11 (W. Va. 1982).

### III.   Conclusion

For the foregoing reasons, KPR respectfully requests that this action be dismissed, with all costs cast against Plaintiffs.

This 16th day of November, 2021.

/s/ *Barry A. Fleming*
Barry A. Fleming
GA Bar Number 262945
bfleming@flemingnelson.com
FLEMING & NELSON, LLP
631 Ronald Reagan Drive
P.O. Box 2208
Evans, Georgia 30809

*Attorney for Defendant Kendall Patient Recovery U.S., LLC*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification by email of such filing to counsel of record.

This 16th day of November, 2021.

/s/ *Barry A. Fleming*
Barry A. Fleming
GA Bar Number 262945