IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| LORETTA BROWMAN, EVELYN ARMSTRONG, TIEESE SMITH, DEWAYNE WILLIAMS, VICTORIA SNOW, RONALD LAMPKIN, BARBARA BETTS, SHERRY HOLES, FELICIA LAMBERT, TERESSA TAYLOR, MICHAEL DUNN, ALOPECIA ARMSTRONG, PATRICIA BELL, BERNICE WILKINS, ANNIE WILLIAMS, CAROLYN WASHINGTON, SCHUYLER KNIGHT, CLARISSA COLEMAN, CHARLES JONES, MARK PUGH, SABRINA WATKINS, and SUSAN DENICE KELLY<br><br>    Plaintiffs,<br><br>v.<br><br>KENDALL PATIENT RECOVERY U.S., LLC, a Delaware limited liability corporation,<br><br>    Defendant. | Civil Action File No.<br><br>1:21-cv-00112-JRH-BKE |

**PLAINTIFFS SABRINA WATKINS, SUSAN KELLY, AND ALOPECIA ARMSTRONG'S MOTION TO ALTER, TO AMEND, OR FOR RELIEF FROM JUDGMENT AND FOR LEAVE TO FILE AMENDED COMPLAINT**

On September 23, 2022, this Court entered judgment in favor of Defendant Kendall Patient Recovery U.S., LLC ("KPR"), dismissing the claims of plaintiffs Sabrina Watkins, Susan Kelly, and Alopecia Armstrong (collectively, the "Plaintiffs") for failure to state a claim. Dkts. 37, 38.[1] Because the defects identified by this Court can be cured by amendment, however,

---

[1] This Court also dismissed the claims of the other twenty plaintiffs for lack of Article III standing. Those plaintiffs' claims are not at issue in this motion.

1

Plaintiffs respectfully request that this Court alter, amend, or grant them relief from the judgment under Fed. R. Civ. P. 59 or 60 and give them leave to file an amended complaint under Fed. R. Civ. P. 15(a)(2). Specifically, Plaintiffs request that the Court re-open the case and allow them to file a proposed First Amended Complaint, a copy of which is attached hereto as Exhibit A.

## BACKGROUND

Plaintiffs filed their original four-count complaint on July 19, 2021, alleging that ethylene oxide ("EtO") emissions from Defendant's Augusta plant caused them to suffer various forms of cancer and multiple miscarriages. Dkt. 1. On Defendant's motion, the Court dismissed the complaint. Dkt. 37. As relevant here, the Court found that all of Ms. Armstrong's and Ms. Watkins's claims, and most of Ms. Kelly's claim, were barred by the statute of limitations because, excepting Ms. Kelly's uterine tumor, all their injuries had occurred more than two years prior to filing suit. While Plaintiffs sought to invoke the discovery rule by alleging in the complaint that they "did not have notice that [their] medical condition[s] [were] wrongfully caused or that [they were] caused by Defendant's emissions of ethylene oxide," dkt. 1 at ¶¶ 92, 129, 133, the Court found those allegations insufficient, noting that "[t]here are no allegations that reasonable diligence could not have uncovered the cause of Plaintiffs' injuries." Dkt. 37 at 17.

The Court went on to address the merits of the remaining claims arising out of Ms. Kelly's 2020 diagnosis of a uterine tumor: negligence, willful and wanton misconduct, private nuisance, and ultrahazardous activity/strict liability. The Court ultimately dismissed all four counts. With respect to negligence, the Court held that Ms. Kelly failed to assert a duty owed to her by Defendant. *Id.* at 19-27. With respect to willful and wanton misconduct, the Court held that she failed to allege behavior so egregious that a jury could find it meets the high bar of

willful and wanton. *Id.* at 27-29. With respect to private nuisance, the Court held that she failed to allege that Defendant was in violation of any statute or common law duty, and that she failed to allege any condemnation to her property. *Id.* at 30-32. Finally, with respect to ultrahazardous activity/strict liability, the Court held that such a cause of action must be based on a statute, and Ms. Kelly pointed to no such statute. *Id.* at 32-34.

Pursuant to the Court's dismissal order, the clerk entered judgment in favor of KPR. Dkt. 38. Plaintiffs now move to alter, to amend, or for relief from the judgment and for leave to file an amended complaint.

## ARGUMENT

The motion should be granted and Plaintiffs given leave to file their proposed First Amended Complaint. As the Eleventh Circuit has explained, "[a] plaintiff may … move for relief under Rules 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered." *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984). *See also DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1075 (11th Cir. 2017). Though brought under Rule 59 or 60, a post-judgment motion for leave to amend is governed by the same generous "freely given" standard as pre-judgment motions for leave to amend under Rule 15(a). *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) ("In this circuit, these same standards apply when a plaintiff seeks to amend after a judgment of dismissal has been entered[.]") (quotations omitted); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) ("Rule 15(a)'s abuse of discretion standard applies when a plaintiff seeks to amend an unamended complaint after entry of judgment by moving to vacate a dismissal pursuant to Fed. R. Civ. P. 59(e)."). *See also*

3

*Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (applying Rule 15(a) standards to Rule 59(e) motion seeking leave to amend complaint). Thus, "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (internal quotations omitted). *See also Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1254-55 (11th Cir. 2017).[2]

Here, as evidenced by the attached proposed First Amended Complaint ("FAC"), the pleading defects identified by this Court can be cured.

With respect to the discovery rule, the proposed FAC alleges that reasonable diligence could not have uncovered the cause of Plaintiffs' injuries until sometime after July 19, 2019— less than two years prior to filing suit. FAC ¶¶ 42, 49, 56. Specifically, Plaintiffs did not discover that EtO was dangerous or that they had been exposed to excessive levels of EtO on Defendant's premises until sometime after the publication of an article entitled "Residents Unaware of Cancer-Causing Toxin in Air." *Id.* ¶¶ 40-41, 47-48, 54-55. That article, published jointly by WebMD and Georgia Health News on July 19, 2019, described EtO emissions and elevated

---

[2] There exists a line of Eleventh Circuit cases that some have argued hold—contrary to the cases cited above—that Rule 15(a)'s "freely given" standard for leave to amend does *not* apply to post-judgment motions. *See, e.g.*, *Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2346364, at *1-2 (S.D. Fla. Jan. 19, 2022) (discussing tension between the two lines of cases); *Furr v. TD Bank, N.A.*, 587 B.R. 743, 746-48 (S.D. Fla. 2018) (same). It is not entirely clear, however, that these two lines of cases are in actual conflict. *See Kurimski*, 2022 WL 2346364, at *2 n.5 ("I am not entirely convinced that the later line of cases truly conflicts with the earlier."); *Furr*, 587 B.R. at 748 (distinguishing the two lines of cases). But even if the two lines were in conflict, this Court would have to apply the "earliest case" rule and follow the line of cases cited above holding that Rule 15(a)'s standard applies post-judgment. *See Kurimski*, 2022 WL 2346364, at *2 (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003)); *Furr*, 587 B.R. at 748 (same). Finally, applying the alternative line of cases that purportedly reject use of the Rule 15(a) standard post-judgment would seem to be contrary to the Supreme Court's decision in *Foman*, which, as noted above, applied Rule 15(a) standards to a Rule 59(e) motion seeking leave to amend a complaint.

cancer risks around medical sterilization plants in Georgia. *Id.* ¶¶ 40, 47, 54. Prior to the article, Plaintiffs had no reason to know or suspect that EtO was dangerous. *Id.* ¶¶ 42, 49, 56. Though information about the dangers of EtO was widely disseminated to industrial users and emitters of EtO, KPR never informed Plaintiffs of those dangers. *Id.* ¶¶ 5, 19, 25-29, 39, 46, 53, 59.

Nor, prior to the article, did Plaintiffs have reason to know or suspect that they had been exposed to dangerously high levels of EtO on Defendant's premises. *Id.* ¶¶ 42, 49, 56. It was not until November 2019 that the Georgia Environmental Protection Division ("GA EPD") publicly released a memo reporting on air dispersion modeling of EtO emissions from KPR's Augusta plant, which revealed dangerously high levels of EtO around the facility. *Id.* ¶ 34. Prior to the release of those air modeling reports, federal and state air quality reports were intended only for government and industry audiences and were not widely circulated to the media or the general public. *Id.* ¶ 35. Even the WebMD/Georgia Health News article about EtO emissions from medical sterilization plants in Georgia did not discuss the KPR facility. *Id.* ¶¶ 40, 47, 54. Indeed, the article seemed to suggest that the only places in Georgia with excessive EtO emissions and elevated cancer risks were Covington and Smyrna. *Id.* The article also noted that neither federal nor state regulators had issued any sort of press release about EtO emissions and elevated cancer risks in Georgia. *Id.* Nor did KPR warn Plaintiffs at any time that they were being exposed to dangerously high levels of EtO on its premises. *Id.* ¶¶ 5, 35, 39, 46, 53, 59.

Simply put, prior to the July 2019 publication of the WebMD/Georgia Health News article, Plaintiffs had no reason to know or suspect that EtO was dangerous or that they had been exposed to excessive levels of EtO on KPR's premises. *Id.* ¶¶ 42, 49, 56. Once each of them learned of the article, they began investigating whether their medical issues could have been caused by EtO and subsequently discovered that they had been exposed to excessive levels of

EtO on Defendant's premises, which caused their injuries. *Id.* ¶¶ 41, 48, 55. In other words, the proposed amendments establish that Plaintiffs did not—even with reasonable diligence—discover that Defendant's EtO emissions were the cause of their cancers and miscarriages until sometime after July 19, 2019, less than two years before they filed suit. The proposed FAC thus cures the discovery rule defect identified by this Court. *See King v. Seitzingers, Inc.*, 287 S.E.2d 252, 254 (Ga. Ct. App. 1981) ("A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.").

With respect to the merits, the proposed FAC now alleges a single count for the three Plaintiffs: negligence. Furthermore, because this Court found that the only claims satisfying Article III traceability requirements were those arising out of Plaintiffs' working at Defendant's facility (in contrast to merely living in the surrounding area), dkt. 37 at 13-14, the proposed FAC includes only those claims. FAC ¶¶ 57-61. Specifically, the proposed FAC alleges that Defendant owed employees like Plaintiffs a duty to keep its premises safe from excessive EtO emissions and to warn Plaintiffs of the dangers of high levels of EtO on its premises. *Id.* ¶ 58. This cures the merits defect identified by this Court as to negligence, i.e., that Plaintiffs failed to identify a duty owed to them by Defendant. *See* O.C.G.A. § 51-3-1 ("When an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."); *Georgia Farmers' Mkt. Auth. v. Dabbs*, 256 S.E.2d 613, 615 (Ga. Ct. App. 1979) ("The owner or occupier of land is

6

under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care.").

While this Court need not allow an amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile," *Bryant*, 252 F.3d at 1163, none of those elements are present here. There has been no undue delay or repeated failure to cure deficiencies by previously allowed amendments, and Plaintiffs do not seek this relief in bad faith or for a dilatory purpose. Nor would allowing amendment cause undue prejudice to Defendant. *See Bryant*, 252 F.3d at 1164-65 (reversing denial of leave to amend where there was "no evidence that the plaintiffs have employed delaying tactics" and "no evidence that allowing an amendment at this stage would prejudice the defendants"); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1257 (11th Cir. 1998) (reversing denial of leave to amend, noting that while "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party … [i]n this case, it is of nominal proportions."); *cf. Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming denial of leave to amend where request was made more than a year after discovery had closed and between five and six years after lawsuits had begun). Finally, because the proposed amendments cure the pleading defects identified by this Court, amendment is not futile. *See Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) ("A grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim, and, in the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion."); *Evans*, 850 F.3d at 1254-55


under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care.").

While this Court need not allow an amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile," *Bryant*, 252 F.3d at 1163, none of those elements are present here. There has been no undue delay or repeated failure to cure deficiencies by previously allowed amendments, and Plaintiffs do not seek this relief in bad faith or for a dilatory purpose. Nor would allowing amendment cause undue prejudice to Defendant. *See Bryant*, 252 F.3d at 1164-65 (reversing denial of leave to amend where there was "no evidence that the plaintiffs have employed delaying tactics" and "no evidence that allowing an amendment at this stage would prejudice the defendants"); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1257 (11th Cir. 1998) (reversing denial of leave to amend, noting that while "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party … [i]n this case, it is of nominal proportions."); *cf. Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming denial of leave to amend where request was made more than a year after discovery had closed and between five and six years after lawsuits had begun). Finally, because the proposed amendments cure the pleading defects identified by this Court, amendment is not futile. *See Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) ("A grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim, and, in the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion."); *Evans*, 850 F.3d at 1254-55

(reversing dismissal with prejudice and remanding with instructions to grant leave to amend where "it cannot be said that any attempt to amend would be futile").

## CONCLUSION

Because amendment would cure the pleading defects identified by the Court in its dismissal order, the case should be re-opened and Plaintiffs given leave to file the attached proposed First Amended Complaint.

Respectfully submitted,

**SABRINA WATKINS, SUSAN KELLY, and ALOPECIA ARMSTRONG,**

Dated: October 21, 2022

By: /s/ Benjamin H. Richman
   *One of Plaintiffs' Attorneys*

Benjamin H. Richman
brichman@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Charles C. Bailey
charlie.bailey@cookconnelly.com
Sutton Connelly
sutton.connelly@cookconnelly.com
COOK & CONNELLY, LLC
750 Piedmont Ave. NE
Atlanta, GA 30308
Tel: 678.539.0680

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2022, a copy of the foregoing ***Plaintiffs Sabrina Watkins, Susan Kelly and Alopecia Armstrong's Motion to Alter, to Amend, or for Relief from Judgement and for Leave to File Amended Complaint*** was filed with the Clerk of Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

/s/ Benjamin H. Richman